Juyoun Han (seeking *pro hac vice*)
Eric Baum (seeking *pro hac vice*)
EISENBERG & BAUM, LLP
24 Union Square East, Penthouse
New York, NY 10003
Tel: (212) 353-8700
Fax: (212) 353-1708
jhan@eandblaw.com
ebaum@eandblaw.com

John K. Buche (CA Bar No. 239477) (Local Counsel)
Byron Ma (CA Bar No. 299706) (Local Counsel)
THE BUCHE LAW FIRM, P.C.
901 S MoPac Expy., Bldg. 1, Ste. 300
Austin, TX 78746
Tel: (512) 215-4997
Fax: (858) 430-2426
jbuche@buchelaw.com
bma@buchelaw.com

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANE DOE, a minor, by and through her guardian,<br><br>   *Plaintiffs*,<br><br>v.<br><br>APPLE, INC.,<br><br>   *Defendant*. | **Civil Action No.: 5:24-cv-5107**<br><br>**COMPLAINT**<br><br>**[CLASS ACTION]**<br><br>**JURY TRIAL DEMANDED** |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................1

INTRODUCTION ...............................................................................3

   Apple's Cloud Service: iCloud .......................................................4

   Apple Knows iCloud Offers a Safe Haven for CSAM Offenders to Store Illicit CSAM Videos and Images................................................................5

   Apple Chose Not to Adopt PhotoDNA and Thus Failed to Report CSAM to Law Enforcement. ......................................................................10

   Apple's Purported Focus on Privacy Is Arbitrary at Best, and Hypocritical at Worst. ....................................................................................11

   Apple's Choice Not to Employ CSAM Detection is Not a Result of End-to-End Encryption, It Is a Business Choice that Apple Made.............................14

   Jane Doe is a Victim of Child Sexual Abuse....................................15

PARTIES......................................................................................17

JURISDICTION AND VENUE ..........................................................17

CLASS ACTION ALLEGATIONS .....................................................18

CAUSES OF ACTION ....................................................................20

   CLAIM I: VIOLATION OF SEX TRAFFICKING LAWS ...............................20

   CLAIM II: VIOLATION OF CONSUMER PROTECTION LAWS.................21

   CLAIM III: CALIFORNIA BUSINESS AND PROFESSIONAL CODES .......22

   CLAIM IV: MISREPRESENTATION ................................................23

   CLAIM V: UNJUST ENRICHMENT ................................................24

   CLAIM VI: NEGLIGENT MISREPRESENTATION AND NEGLIGENT MISREPRESENTATION PER SE ....................................................25

   CLAIM VII: STRICT PRODUCTS LIABILITY ................................26

   CLAIM VIII: NEGLIGENT PRODUCTS LIABILITY AND NEGLIGENCE PER SE ......................................................................................28

PRAYER FOR RELIEF ....................................................................29

Plaintiff Jane Doe, by and through her guardian through her attorneys, Eisenberg & Baum, LLP, states her Complaint against Defendant Apple, Inc.:

## PRELIMINARY STATEMENT

When 9-year-old Jane Doe received an iPad for Christmas, she never imagined perpetrators would use it to coerce her to produce and upload child sexual abuse material ("CSAM") to iCloud. In this lawsuit, Plaintiff demands that Apple invest in prevention of CSAM on the iCloud and compensate victims who have been exploited due to Apple's choice to overlook this problem. This lawsuit claims that Apple knew that it had dire CSAM problem but chose not to address it. It accuses Apple of engaging in "privacy-washing," a deceptive marketing tactic where Apple touts its commitment to protect the privacy of its consumers but neglect to meaningfully implement its stated ideas to practice. This lawsuit alleges that Apple exploits "privacy" at its own whim: at times emblazoning "privacy" on city billboards and slick commercials and at other times using privacy as a justification to look the other way while Doe and other children's privacy is utterly trampled on through the proliferation of CSAM on Apple's iCloud.

A clear example of privacy-washing is this case. According to the statements of its anti-fraud chief, Apple knew that iCloud has become "the greatest platform for distributing child porn." *See* Exhibit A. Friedman continued to state, "the spotlight at Facebook is all on trust and safety . . . in privacy, they suck. Our priorities are the inverse. . . we have chosen to not know [about CSAM] in enough places where we really cannot say."[1] Apple also consistently underreports CSAM to agencies like the National Center for Missing & Exploited Children ("NCMEC"). For example, in 2023, while four leading tech companies submitted over 32 million reports of CSAM to NCMEC, Apple submitted

---

[1] Sean Hollister, *Sweetheart Deals and Plastic Knives: All the Best Emails from the Apple v. Epic Trial*, THE VERGE (Aug. 19, 2021), https://www.theverge.com/c/22611236/epic-v-apple-emails-project-liberty-app-store-schiller-sweeney-cook-jobs (under Item 71). *See* Gabriel J.X. Dance and Michael H. Keller, *Tech Companies Detect a Surge in Online Videos of Child Sexual Abuse*, NEW YORK TIMES (Feb. 7, 2020), https://www.nytimes.com/2020/02/07/us/online-child-sexual-abuse.html; Exhibit A.

1

*Jane Doe v. Apple, Inc.* – COMPLAINT

only 267.[2] Despite Apple's abundant resources, it opts not to adopt industry standards for CSAM detection and instead shifts the burden and cost of creating a safe user experience to children and their families, as evidenced by its decision to completely abandon its CSAM detection tool. Apple's privacy policy states that it would collect users' private information to prevent things like CSAM, but it fails to do so in practice – a failure that it already knew of.

Apple's incredulous rhetoric hedges one notion of privacy against another: Apple creates the false narrative that by detecting and deterring CSAM, it would run the risk of creating a surveillance regime that violates other users' privacy. By framing privacy and safety as a zero-sum game, Apple made choices to overlook safety, even though other tech companies have deployed technology to disrupt the distribution of CSAM.[3]

But children's safety should not be lost on Apple's notion of privacy: comprehensive privacy should *encompass* safety for all consumers. In fact, in both online and offline activities, our society frequently harmonizes privacy and safety, especially in contexts where children and minors are involved. Various industries and fields strike a balance between reasonable expectations of privacy and reasonable expectations of safety—showing a government ID when purchasing alcohol at a restaurant; granting parents and guardians access to a minor's medical records; requiring teenage drivers to obtain a learner's permit before a driver's license—the tech industry is no exception, particularly as it relates to CSAM.

CSAM is the result of a cycle of production, distribution, and possession. All three of these stages are illegal at the state and federal level.[4] Adult film production companies are required by law to have a Custodian of Records that documents and holds records of

---

[2] *2023 CyberTipline Reports by Electronic Service Providers*, NATIONAL CENTER FOR MISSING & EXPLOITED CHILDREN (2024), https://www.missingkids.org/content/dam/missingkids/pdfs/2023-reports-by-esp.pdf.
[3] *PhotoDNA*, MICROSOFT, https://microsoft.com/en-us/photodna (last visited June 20, 2024).
[4] *See, e.g.,* 18 U.S.C. §§ 2251, 2251A, 2252, 2252A, 2260; *State Child Pornography Laws*, FINDLAW, https://www.findlaw.com/state/criminal-laws/child-pornography.html (last updated Mar. 28, 2024).

*Jane Doe v. Apple, Inc.* – COMPLAINT

the ages of all performers. Online platforms ranging from email services to video-sharing websites can be fined for knowingly hosting or facilitating the communication of CSAM. Storage facilities can be found liable if they rent storage spaces to individuals who use them to commit crimes or store illegal items. The tech industry cannot claim a blanket exemption from these duties.

Notably, this lawsuit does undermine the importance of privacy of users generally, nor does it oppose privacy tools like end-to-end encryption. It simply demands that Apple invest in and deploy means to comprehensively enhance user privacy and guarantee the safety of children users.

Lastly, Plaintiff's claims against Apple relate to the storage and possession of CSAM, not the production, publication, or communication of CSAM. Accordingly, the Communications Decency Act does not apply and cannot be relied upon as a defense to these claims.

## INTRODUCTION

1.      This lawsuit is brought on behalf of Jane Doe, a nine-year-old child who is a victim of child sexual abuse, which was facilitated on iMessage and stored on iCloud, both of which are products and services developed, maintained, and distributed by Apple, Inc. ("Apple").

2.      Jane Doe asserts claims for violations of sex trafficking laws, consumer protection laws, breach of contract, misrepresentation, and unjust enrichment on behalf of class members against Apple for developing, maintaining, and distributing iMessage and iCloud.

3.      Jane Doe brings this action seeking declaratory and injunctive relief; compensatory and punitive damages; and attorney's fees and costs to redress Defendant's unlawful conduct.

3

**Apple's Cloud Service: iCloud**

4.      Apple launched iCloud on October 12, 2011, which enables users to store and sync data across devices, including Apple Mail, Apple Calendar, Apple Photos, Apple Notes, contacts, settings, backups, and files, to collaborate with other users, and track assets through Apple's Find My service.

5.      iCloud is akin to a digital warehouse, whereby users can choose to store illegal and criminal material.

6.      iCloud is the only way to back up iPhones and iPads to the internet.

7.      iCloud is a cloud storage service and thus not a communication platform.

8.      Because iCloud is exclusively used for storage, the Communications Decency Act is not within scope.

9.      Apple offers a variety of subscription-based iCloud plans:

      a.  $0.99 per month for 50GB

      b.  $2.99 per month for 200GB

      c.  $9.99 per month for 2TB

      d.  $29.99 per month for 6TB

      e.  $59.99 per month for 12TB

10.      While the exact number of paying iCloud subscribers is unknown, during its third-quarter 2023 earnings call, Apple announced its services business, which includes iCloud, Music, Fitness+, Pay, Apple Card, and Apple TV+, has more than one billion paying subscribers.[5]

11.      During Apple's second-quarter 2024, sales in Apple's services unit grew to $23.87 billion.[6]

---

[5] Press Release, Apple, Apple Reports Third Quarter Results (Aug. 3, 2023), https://www.apple.com/newsroom/2023/08/apple-reports-third-quarter-results/.
[6] Fiscal Year 2024, Quarter 2, Consolidated Financial Statements, APPLE (May 2, 2024), https://www.apple.com/newsroom/pdfs/fy2024-q2/FY24_Q2_Consolidated_Financial_Statements.pdf.

*Jane Doe v. Apple, Inc.* – COMPLAINT

### *Apple Knows iCloud Offers a Safe Haven for CSAM Offenders to Store Illicit CSAM Videos and Images.*

12.     The sexual exploitation and abuse of children did not start with the internet, but advances in digital and mobile technology have enabled and facilitated related crimes.[7]

13.     For example, offenders use social media platforms to find vulnerable children and use cloud storage as digital warehouses for troves of illicit images and videos.[8]

14.     Before the internet, possession of CSAM was limited by physical constraints. Offenders could physically possess only what they could covertly store. Now, with advances in cloud storage, those physical limitations are gone.[9]

15.     Nonproduction child pornography offenses—such as possession, receipt, and distribution—increasingly involve larger numbers of videos and images. In 2019, nonproduction offenses involved a median of more than 4,200 images, with some offenders possessing and distributing millions of images and videos.[10]

16.     NCMEC is made aware of CSAM on an electronic service provider's ("ESP") platform by receiving tips in one of four ways: (1) from an ESP upon detection of online CSAM; (2) from a member of the public; (3) from proactive investigative efforts by law enforcement; or (4) from an ESP that identifies the online CSAM once law enforcement serves the provider with legal process.[11]

---

[7] Laura Draper, *Protecting Children in the Age of End-to-End Encryption*, PROGRAM ON INFORMATION JUSTICE AND INTELLECTUAL PROPERTY AND TECHNOLOGY, LAW & SECURITY PROGRAM (Fall 2022), https://digitalcommons.wcl.american.edu/cgi/viewcontent.cgi?article=1082&context=research.
[8] *Id.*
[9] *Id.*
[10] *Federal Sentencing of Child Pornography: Non-Production Offenses*, U.S. SENTENCING COMMISSION (June 2021), https://www.ussc.gov/research/research-reports/federal-sentencing-child-pornography-non-production-offenses.
[11] Laura Draper, *Protecting Children in the Age of End-to-End Encryption*, PROGRAM ON INFORMATION JUSTICE AND INTELLECTUAL PROPERTY AND TECHNOLOGY, LAW & SECURITY PROGRAM (Fall 2022), https://digitalcommons.wcl.american.edu/cgi/viewcontent.cgi?article=1082&context=research.

5

*Jane Doe v. Apple, Inc.* – COMPLAINT

17.   Currently, NCMEC receives the overwhelming majority of tips from ESPs. NCMEC received 36.2 million reports in 2023. Of those, 265,542 (less than 1 percent) were from the public; the remaining 35,944,826 were from ESPs.[12]

18.   The proliferation of end-to-end encryption enhances user privacy but also diminishes companies' ability to confidently detect CSAM.

19.   All end-to-end encrypted services should provide easy-to-use reporting functions that explicitly permit users to report CSAM. The process of reporting CSAM should allow users to report content that is visible without creating or logging into an account and eliminate mandatory personal information fields in reporting forms.[13]

20.   While a child is unlikely to self-report the harm to the website or platform, they may report the abuse to a parent, guardian, sibling, or trusted adult, who will then file a report to NCMEC or law enforcement.[14]

21.   While a reporting function is a low-cost measure for companies, other measures may require tech companies to make a larger investment. For instance, because end-to-end encryption blocks ESPs from identifying and reporting CSAM on their platforms, they should build systems that prevent CSAM from entering or circulating in their ecosystem.

22.   By Apple's own admission, iCloud is designed to allow these illegal and criminal materials to be stored on its service because the design of iCloud and other Apple products and services prioritizes the privacy of perpetrators at the expense of protecting children from CSAM. *See* Exhibit A.

23.   In 2023, Forbes reviewed "some 100 federal cases in which investigators

---

[12] *Our Impact 2023*, NATIONAL CENTER FOR MISSING & EXPLOITED CHILDREN (2024), https://www.missingkids.org/content/dam/missingkids/pdfs/2023-ncmec-our-impact.pdf.
[13] *Reviewing Child Sexual Abuse Material Reporting Functions on Popular Platforms*, CANADIAN CENTRE FOR CHILD PROTECTION (2020), https://content.c3p.ca/pdfs/C3P_ReviewingCSAMMaterialReporting_en.pdf. The C3P includes other recommendations for CSAM reporting.
[14] Laura Draper, *Protecting Children in the Age of End-to-End Encryption*, PROGRAM ON INFORMATION JUSTICE AND INTELLECTUAL PROPERTY AND TECHNOLOGY, LAW & SECURITY PROGRAM (Fall 2022), https://digitalcommons.wcl.american.edu/cgi/viewcontent.cgi?article=1082&context=research.

*Jane Doe v. Apple, Inc.* – COMPLAINT

searched Apple technologies, believing they were used in furtherance of child exploitation, found that the company's systems have been used to store and transmit thousands of items of CSAM between 2014 and 2023."[15]

24.     In a report published by the Heat Initiative on September 11, 2023, it identified 93 CSAM cases involving Apple products or services and most images and videos were of children under the age of 13.[16] According to the research, 34 of the 93 cases involved CSAM perpetrators using Apple's iCloud to store and distribute images and videos of CSAM.

25.     In text messages unearthed during discovery in *Epic Games v. Apple*, Apple's anti-fraud chief Eric Friedman told his colleague in 2020 that Facebook and other tech companies had focused on trust and safety but "sucked" at privacy, adding that Apple's exclusive prioritization of privacy meant it had become "the greatest platform for distributing child porn." *See* Exhibit A.

---

[15] Thomas Fox-Brewster and Alexandra S. Levine, *Inside Apple's Impossible War on Child Exploitation*, FORBES (Sept. 7, 2023), https://www.forbes.com/sites/thomasbrewster/2023/09/07/apple-icloud-child-sexual-abuse-material-privacy/. That count, which does not include state, local, or international records, represents only a fraction of the total CSAM cases involving Apple.
[16] *Cases for the Website (without Perpetrator Details)*, HEAT INITIATIVE (Sept. 11, 2023), https://heatinitiative.org/wp-content/uploads/2023/10/H.I.-Cases-for-the-Website-without-Perpetrator-Details.pdf.

*Jane Doe v. Apple, Inc.* – COMPLAINT

Eric (FEAR) Friedman

The spotlight at Facebook etc is all on trust and safety (fake accounts, etc).  In privacy, they suck.

Sent: 02/14/20, 15:23:30 PM GMT
Service: iMessage

Eric (FEAR) Friedman

Our priorities are the inverse.

Sent: 02/14/20, 15:23:36 PM GMT
Service: iMessage

Eric (FEAR) Friedman

Which is why we are the greatest platform for distributing child porn, etc.

Sent: 02/14/20, 15:23:49 PM GMT
Service: iMessage

Herve Sibert

Really? I mean, is there a lot of this in our ecosystem? I thought there were even more opportunities for bad actors on other file sharing systems

Sent: 02/14/20, 15:25:02 PM GMT
Service: iMessage

Eric (FEAR) Friedman

Yes

Sent: 02/14/20, 15:25:16 PM GMT
Service: iMessage

Eric (FEAR) Friedman

But -- and here's the key -- we have chosen to not know in enough places where we really cannot say.

Sent: 02/14/20, 15:25:36 PM GMT
Service: iMessage

8

*Jane Doe v. Apple, Inc.* – COMPLAINT

26.     According to the text messages above, despite knowing that CSAM is proliferating on iCloud, Apple has "chosen not to know" that this is happening, and punted this responsibility to developers of other social media integrations to deal with CSAM.

27.     Apple also designed iCloud links in a way that makes it conducive for CSAM offenders to hide their tracks.

28.     By design, high-resolution photos and videos can be shared with an iCloud Link. iCloud links can be sent to email addresses or copied and pasted into another application, such as a Messages conversation.

29.     iCloud Links automatically expire after 30 days; however, the sender can stop sharing them sooner.

30.     In Photos on iCloud.com, the sender can select the photo collection they want to stop sharing.

31.     The ability to un-share an iCloud Link allows CSAM perpetrators to cover their tracks after sending or receiving CSAM.

32.     While Apple offers its customers an email address for reporting security or privacy vulnerabilities in its products,[17] upon information and belief, Apple has not created or invested in user-reporting channels specifically for images or videos of CSAM.

33.     In place of the CSAM detection tool Apple originally announced in August 2021, Apple announced updates to its Communication Safety feature in December 2021.[18]

34.     While Communication Safety detects whether a child receives or is attempting to send CSAM, it does not prevent the storage of CSAM or scan for CSAM in iCloud. Communication Safety ultimately shifts the burden onto children and their

---

[17] *Report a Security or Privacy Vulnerability*, APPLE (Nov. 30, 2023), https://support.apple.com/en-us/102549.
[18] *About Communication Safety on Your Child's Apple Device*, APPLE (Mar. 7, 2024), https://support.apple.com/en-us/105069.

parents and guardians.

**_Apple Chose Not to Adopt PhotoDNA and Thus Failed to Report CSAM to Law Enforcement._**

35.    Apple relies on "privacy" as an excuse to not invest in safety, but it is a false narrative. Privacy and safety need not be mutually exclusive.

36.    PhotoDNA, for example, is perfectly compatible with end-to-end encryption and would allow Apple to mitigate CSAM on its products and services while upholding privacy.[19]

37.    PhotoDNA's CSAM detection technique does not require Apple to read or scan encrypted communications or files and does not grant law enforcement with a backdoor into its data.

38.    Even when CSAM solutions consistent with privacy, like PhotoDNA, exist, Apple has chosen not to adopt them.

39.    Facebook and Google have been using PhotoDNA to detect CSAM for over a decade.

40.    Snapchat has been using PhotoDNA since around 2020.

41.    PhotoDNA is effectively an industry standard for CSAM detection.

42.    For example, Google uses PhotoDNA to detect known CSAM and AI to identify new CSAM. Google is known to scan both Gmail and Google Drive for CSAM.[20] As Google does not end-to-end encrypt Gmail or Google Drive, it is possible for it to scan for illegal content.[21]

---

[19] Hany Farid, *Briefing: End-to-end Encryption and Child Sexual Abuse Material*, 5RIGHTS FOUNDATION (Dec. 2019), https://5rightsfoundation.com/uploads/5rights-briefing-on-e2e-encryption--csam.pdf.
[20] Susan Jasper, *How We Detect, Remove and Report Child Sexual Abuse Material*, GOOGLE (Oct. 28, 2022), https://blog.google/technology/safety-security/how-we-detect-remove-and-report-child-sexual-abuse-material/.
[21] Emma Roth and Richard Lawler, *Google AI Flagged Parents' Accounts for Potential Abuse Over Nude Photos of Their Sick Kids*, THE VERGE (Aug. 21, 2022), https://www.theverge.com/2022/8/21/23315513/google-photos-csam-scanning-account-deletion-investigation; Thomas Brewster, *Google Scans Gmail and Drive for Cartoons of Child Sexual Abuse*, FORBES (Dec. 20, 2021), https://www.forbes.com/sites/thomasbrewster/2021/12/20/google-scans-gmail-and-drive-for-cartoons-of-child-sexual-abuse/.

*Jane Doe v. Apple, Inc.* – COMPLAINT

43.     Apple has not adopted PhotoDNA.

44.     According to Jon Rouse, a former child abuse investigator, Apple does not proactively scan its products or services, including storages or communications, to assist law enforcement to stop child exploitation.[22]

45.     In 2023, while four leading tech companies submitted over 32 million reports of CSAM to NCMEC, Apple submitted only 267.[23]

46.     Compared to widely-used online storage providers like Google which provide millions of CSAM leads every year to NCMEC and law enforcement, Apple reports just a couple hundred despite having hundreds of millions of iCloud users.[24]

**_Apple's Purported Focus on Privacy Is Arbitrary at Best, and Hypocritical at Worst._**

47.     Apple's privacy policy and marketing materials frequently tout its commitment to upholding privacy for its customers yet uses privacy as an excuse to not implement measures that prevent CSAM on its products and services.

48.     Apple intentionally designed its products and services with a sole focus on privacy without much consideration for trust and safety, knowing such a design approach would result in harm to its most vulnerable customers: children.

49.     Apple's privacy policy first made mention of "child sexual exploitation

---

[22] Thomas Fox-Brewster and Alexandra S. Levine, *Inside Apple's Impossible War on Child Exploitation*, FORBES (Sept. 7, 2023), https://www.forbes.com/sites/thomasbrewster/2023/09/07/apple-icloud-child-sexual-abuse-material-privacy/.

[23] *2023 CyberTipline Reports by Electronic Service Providers*, NATIONAL CENTER FOR MISSING & EXPLOITED CHILDREN (2024), https://www.missingkids.org/content/dam/missingkids/pdfs/2023-reports-by-esp.pdf. Here, Facebook, Instagram, WhatsApp, and Google were the four companies with the highest number of NCMEC reports. *Id.* In its first quarterly investor report of 2024, Meta, which owns Facebook, Instagram, and WhatsApp, "estimate[s] that more than 3.2 billion people use at least one of our apps each day." *First Quarter 2024 Results Conference Call*, META (Apr. 24, 2024), https://s21.q4cdn.com/399680738/files/doc_financials/2024/q1/META-Q1-2024-Earnings-Call-Transcript.pdf. For comparison, Apple announced in its first quarter results of 2024 that its "installed base of active devices has not surpassed 2.2 billion." Press Release, Apple, Apple Reports First Quarter Results (Feb. 1, 2024), https://www.apple.com/newsroom/2024/02/apple-reports-first-quarter-results/. According to its second quarter results published in May 2024, Apple's active devices "has reached a new all-time high across all products and all geographic segments." Press Release, Apple, Apple Reports Second Quarter Results (May 2, 2024), https://www.apple.com/newsroom/2024/05/apple-reports-second-quarter-results/.

[24] *2023 CyberTipline Reports by Electronic Service Providers*, NATIONAL CENTER FOR MISSING & EXPLOITED CHILDREN (2024), https://www.missingkids.org/content/dam/missingkids/pdfs/2023-reports-by-esp.pdf.

11

*Jane Doe v. Apple, Inc.* – COMPLAINT

material" on August 29, 2019, where it states:

> We may also use your personal information for account and
> network security purposes, including in order to protect our
> services for the benefit of all our users, and pre-screening or
> scanning uploaded content for potentially illegal content,
> including child sexual exploitation material.[25]

50.     According to this privacy policy, Apple had stated to users that it would screen and scan content to root out child sexual exploitation material.

51.     In August 2021, Apple announced a CSAM scanning tool, dubbed NeuralHash, that would scan images stored on users' iCloud accounts for CSAM.

52.     Apple claimed the software could detect previously-identified CSAM on-device, before it was uploaded and without looking at or capturing any information about non-CSAM photos.[26]

53.     Accompanying Apple's announcement was a published technical summary, which states, "Apple servers flag accounts exceeding a threshold number of images that match a known database of CSAM image hashes so that Apple can provide relevant information to the National Center for Missing and Exploited Children (NCMEC)."[27]

54.     Apple claimed this process "is secure, and is expressly designed to preserve user privacy."[28]

55.     Just one month after the announcement, Apple abandoned its CSAM scanning project and formally closed it down in December 2022.[29]

---

[25] *Privacy Policy*, APPLE (Aug. 29, 2019),
https://web.archive.org/web/20191231023609/https://www.apple.com/legal/privacy/en-ww/.
[26] Thomas Fox-Brewster and Alexandra S. Levine, *Inside Apple's Impossible War on Child Exploitation*, FORBES (Sept. 7, 2023), https://www.forbes.com/sites/thomasbrewster/2023/09/07/apple-icloud-child-sexual-abuse-material-privacy/.
[27] *CSAM Detection: Technical Summary*, APPLE (Aug. 2021), https://www.apple.com/child-safety/pdf/CSAM_Detection_Technical_Summary.pdf.
[28] *Id.*
[29] Thomas Fox-Brewster and Alexandra S. Levine, *Inside Apple's Impossible War on Child Exploitation*, FORBES (Sept. 7, 2023), https://www.forbes.com/sites/thomasbrewster/2023/09/07/apple-icloud-child-sexual-abuse-material-privacy/.

*Jane Doe v. Apple, Inc.* – COMPLAINT

56.     In explaining the reason why it chose to abandon the development of the iCloud CSAM scanning feature, Apple stated:

> "We've chosen a very different path—one that prioritizes the security and privacy of our users. Scanning every user's privately stored iCloud content would in our estimation pose serious unintended consequences for our users . . . [s]canning for one type of content, for instance, opens the door for bulk surveillance and could create a desire to search other encrypted messaging systems across content types (such as images, videos, text or audio) and content categories. How can users be assured that a tool for one type of surveillance has not been reconfigured to surveil for other content such as political activity or religious persecution? Tools of mass surveillance have widespread negative implications for freedom of speech and, by extension, democracy as a whole. Also, designing this technology for one government could require applications for other countries across new data types."[30]

57.     But despite its privacy-washing narrative and spreading arbitrary concerns that opening the door for scanning for CSAM can lead to governmental mass surveillance, Apple compromised its own statement when it transferred operation of its iCloud service for Chinese users to a third-party Chinese company, GCBD, in February 2018. China's Cyber Security Law requires network operators to provide "technical support and assistance" to law enforcement and state security agents. That is, when Chinese authorities request information from GCBD about iCloud users for a criminal investigation, GCBD is legally obligated to provide this data, with few, if any, viable legal avenues to challenge or refuse the request."[31]

58.     According to Apple, as of January 10, 2024, "iCloud in China mainland is

---

[30] Email from Erik Neuenschwander, Director of User Privacy and Child Safety at Apple, to Sarah Gardner, CEO at Heat Initiative (Aug. 30 and 31, 2023), https://s3.documentcloud.org/documents/23933180/apple-letter-to-heat-initiative.pdf.
[31] *When Profits Threaten Privacy – 5 Things You Need to Know about Apple in China*, AMNESTY INTERNATIONAL (Feb. 27, 2018), https://www.amnesty.org/en/latest/news/2018/02/5-things-you-need-to-know-about-apple-in-china/.

*Jane Doe v. Apple, Inc.* – COMPLAINT

operated by GCBD."[32]

***Apple's Choice Not to Employ CSAM Detection is Not a Result of End-to-End Encryption, It Is a Business Choice that Apple Made.***

59.     Since December 2022, Apple has offered two levels of encryption for iCloud: (a) standard data protection and (2) Advanced Data Protection for iCloud.[33]

60.     "Standard data protection is the default setting for your account. Your iCloud data is encrypted, the encryption keys are secured in Apple data centers so we can help you with data recovery, and only certain data is end-to-end encrypted."[34]

61.     "Advanced Data Protection for iCloud is an optional setting that offers our highest level of cloud data security. If you choose to enable Advanced Data Protection, your trusted devices retain sole access to the encryption keys for the majority of your iCloud data, thereby protecting it using end-to-end encryption. Additional data protected includes iCloud Backup, Photos, Notes, and more."[35]

62.     While iCloud users are provided standard data encryption by default, users must explicitly opt into the Advanced Data Protection level.

63.     Because users must explicitly opt-in to the latter, a substantial amount of iCloud user data is likely unencrypted, in turn granting Apple access to considerable user data on iCloud.

64.     Apple retains the key to various data categories, including Photos, iCloud Backups, and Messages, for iCloud data under the standard data protection scheme, according to Apple.[36]

65.     Apple also handles information not just from its own apps, but from third-

---

[32] *Learn More about iCloud in China Mainland*, APPLE (Jan. 10, 2024), https://support.apple.com/en-us/111754.
[33] *iCloud Data Security Overview*, APPLE (Jan 10, 2024), https://support.apple.com/en-us/102651; *Apple Advances User Security With Powerful New Data Protections*, APPLE (Dec. 7, 2022), https://www.apple.com/newsroom/2022/12/apple-advances-user-security-with-powerful-new-data-protections/.
[34] *iCloud Data Security Overview*, APPLE (Jan 10, 2024), https://support.apple.com/en-us/102651.
[35] *Id.*
[36] *Id.*

*Jane Doe v. Apple, Inc.* – COMPLAINT

party email, social and messaging platforms where users have device backups turned on.

66.     While third-party app data stored in iCloud is always encrypted in transit and on server, upon information and belief, under the standard data protection scheme, Apple retains the key to this iCloud data.

67.     In other words, data from Meta's WhatsApp and even privacy-focused messengers like Signal could be stored and unencrypted on iCloud.

68.     By retaining the key to iCloud data, Apple not only has access to users' data on iCloud but can easily scan for illegal content like CSAM, but Apple chooses not to do so.

69.     Apple's privacy policy, which was last updated on March 31, 2024, states the following under its "Apple's Use of Personal Data" section:

> **Security and Fraud Prevention.** To protect individuals, employees, and Apple and for loss prevention and to prevent fraud, including to protect individuals, employees, and Apple for the benefit of all our users, and prescreening or scanning uploaded content for potentially illegal content, including child sexual exploitation material.[37]

70.     Upon information and belief, Apple grants itself the key to unencrypted data, and allows itself permission to screen or scan content for CSAM content, but has failed to take action to detect and report CSAM on iCloud.

### *Jane Doe is a Victim of Child Sexual Abuse.*

71.     Plaintiff Jane Doe is a nine-year-old child and resident of Charlotte, North Carolina.

72.     Plaintiff Jane Does is a victim of Perceived First Person CSAM.

73.     Perceived first person material production and distribution refers to the

---

[37] *Apple Privacy Policy*, APPLE, https://www.apple.com/legal/privacy/en-ww/ (last updated Mar. 31, 2024).

*Jane Doe v. Apple, Inc.* – COMPLAINT

newer trend of explicit images that appear to be created by the child themselves, although the child may have created the images unwittingly or unwillingly and the child may not have known about or intended broader distribution of the imagery.[38]

74.     In December 2023, Plaintiff received an iPad from a family member as a Christmas gift.

75.     Plaintiff disaffirms any contracts or agreements she may have entered in using the iPad and Apple's services.

76.     Soon thereafter, Plaintiff created an account on Snapchat on her iPad.

77.     Between December 2023 and January 2024, two unknown users on Snapchat requested to be friends with Plaintiff.

78.     Those two unknown Snapchat users asked for Plaintiff's iCloud ID.

79.     Over the course of two to three days, these two unknown users sent Plaintiff approximately five videos containing CSAM via iMessage.

80.     Upon information and belief, these videos were sent to Plaintiff as iCloud links in an iMessage.

81.     iMessage is an instant messaging service developed by Apple, Inc.

82.     The five high-resolution CSAM videos sent to Plaintiff were each about three to minutes in length.

83.     The CSAM videos Plaintiff received depicted young children engaged in sexual intercourse.

84.     The two individuals who had reached out to Plaintiff then used iMessage to instruct Jane Doe to make CSAM videos of herself.

85.     They instructed Plaintiff to go to the bathroom and record videos of herself portraying nudity, showing her genitals, and engaging in vaginal penetration with objects

---

[38] Laura Draper, *Protecting Children in the Age of End-to-End Encryption*, PROGRAM ON INFORMATION JUSTICE AND INTELLECTUAL PROPERTY AND TECHNOLOGY, LAW & SECURITY PROGRAM (Fall 2022), https://digitalcommons.wcl.american.edu/cgi/viewcontent.cgi?article=1082&context=research.

*Jane Doe v. Apple, Inc.* – COMPLAINT

and other body parts.

86.    As a result of this interaction, Plaintiff is severely harmed, mentally and physically. Plaintiff is currently seeking psychotherapy and mental health care. According to her family, Plaintiff and her family have been suffering from the sexual abuse that she endured. Plaintiff's mother laments that Plaintiff's innocence and carefree childhood has been ripped away from her.

87.    Upon information, many similarly situated individuals are similarly harmed by Defendant's product iCloud, which provides the tools and storage for perpetrators who engage in CSAM protection to hide illicit and criminal materials.

## PARTIES

88.    Plaintiff Jane Doe is a nine-year-old child and resident of Charlotte, North Carolina. Plaintiff Jane Doe brings this class action, and all other similarly situated, against Defendant. Plaintiff Jane Doe requests that this Court permit her to proceed under a pseudonym ("Jane Doe"). If required by the Court, she will seek permission to proceed under the pseudonyms. The use of pseudonym is necessary to preserve privacy in a matter of sensitive and highly personal nature regarding the minor child, given that some of the background allegations relate to her private experience as a victim of harassment. Plaintiff's sensitive and personal experiences were not the result of any voluntary undertaking on her part, and neither the public, nor the Defendant, will be prejudiced by Plaintiff's identity remaining private.

89.    Defendant Apple, Inc. ("Apple") is a California Corporation with its principal place of business in Cupertino, California. Apple manufactures and sells mobiles devices, including the iPhone and iPad, and developed and provides cloud storage service iCloud.

## JURISDICTION AND VENUE

90.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332

17

(federal diversity jurisdiction), as Plaintiff is a resident of a different state from Defendant and the amount in controversy exceeds the jurisdiction amount required by that code section.

91.     This Court has jurisdiction pursuant to 28 U.S.C. § 1332 (federal question jurisdiction), as it involves allegations of violation of federal law. This Court has pendent jurisdiction of all alleged state law claims.

92.     Venue is appropriate in this District because Defendant conducts its main business within this district and committed the actions giving rise the claims herein.

## CLASS ACTION ALLEGATIONS

93.     Jane Doe incorporates by reference all preceding paragraphs and realleges them in support of this claim.

94.     Pursuant to Fed. R. Civ. P. 23(b)(3) and 23(b)(2), Plaintiffs brings this action on behalf of herself, and all others similarly situated, as representative of the following class (the "Class"):

> Each and every individual in the United States who has been a victim of child sexual abuse resulting from the transmission of CSAM on Apple's iCloud service in the three years preceding the filing of this lawsuit (the "Class").

95.     The requirements of Fed. R. Civ. P. 23 are met in this case.

96.     The Class, as defined, is so numerous that joinder of all members if impracticable. Although discovery will be necessary to establish the exact size of the class, it is likely, based on the nature of Defendant's business, that class members number in the millions.

97.     There are questions of fact and law common to the Class as defined, which common question predominate over any questions affecting only individual members. The Common questions include:

18

*Jane Doe v. Apple, Inc.* – COMPLAINT

a. whether Defendant has established safety measures to combat CSAM online and to protect victims,

b. whether Defendant maintains safety measures to combat CSAM online and to protect victims,

c. whether Defendant has performed its duty to detect and report CSAM to NCMEC,

98.    Plaintiff can and will fairly and adequate represent and protect the interests of the Class, as defined, and have no interests that conflict with the interests of the Class because:

1. All of the questions of law and fact regarding the liability of the Defendant are common to the class and predominate over any individual issues that may exist, such that by prevailing on her own claims, Plaintiffs will necessarily establish the liability of the Defendant to all class members;

2. Without the representation provided by Plaintiffs, it is unlikely that any class members would receive legal representation to obtain the remedies specific by relevant statutes and the common law;

3. Plaintiffs have retained competent attorneys who are experienced in the conduct of class actions. Plaintiffs and their counsel have the necessary resources to adequately and vigorously litigate this class action, and Plaintiffs and their counsel are aware of their fiduciary responsibility to the class members and are determined to diligently discharge those duties to obtain the best possible recovery for the Class.

99.    Defendant's actions have affected numerous consumers in a similar way. The class action is superior to any other method for remedying Defendant's actions given that common questions of fact and law predominate. Class treatment is likewise indicated to ensure optimal compensation for the Class and limiting the expense and judicial resources associated with thousands of potential claims.

19

1
2
3
4

# CAUSES OF ACTION
## CLAIM I: VIOLATION OF SEX TRAFFICKING LAWS
## 18 U.S.C. § 2421A

(by Plaintiff on behalf of Class against Defendant)

100.   Jane Doe incorporates by reference all preceding paragraphs and realleges them in support of this claim.

101.   Jane Doe brings this claim individually and on behalf of the Class against Defendant.

102.   Under 18 U.S.C. § 2421A(a), "[w]hoever, using a facility or means of interstate or foreign commerce or in or affecting interstate or foreign commerce, owns, manages, or operates an interactive computer service . . . with the intent to promote or facilitate the prostitution of another person shall be fined under this title, imprisoned for not more than 10 years, or both."

103.   An aggravated violation under 18 U.S.C. § 2421A(b) provides, "[w]hoever, using a facility or means of interstate or foreign commerce or in or affecting interstate or foreign commerce, owns, manages, or operates an interactive computer service . . . with the intent to promote or facilitate the prostitution of another person and (1) promotes or facilitates the prostitution of 5 or more persons; or (2) acts in reckless disregard of the fact that such conduct contributed to sex trafficking in violation of 1591(a), shall be fined under this titled, imprisoned for not more than 25 years, or both."

104.   Under 18 U.S.C. § 2421A(c), "Any person injured by reason of a violation of section 2421A(b) may recover damages and reasonable attorneys' fees in an action before any appropriate United States district court."

105.   As previously alleged, Apple owns and operates iCloud which is akin to a digital warehouse where users can choose to store illegal and criminal material.

106.   By Apple's own knowledge and admission, iCloud is the greatest platform

20

*Jane Doe v. Apple, Inc.* – COMPLAINT

for storing and distributing child porn because iCloud prioritizes the privacy of perpetrators of CSAM offenders at the costs of children's safety. Despite knowing that iCloud is the main place for the proliferation of CSAM, Apple "chose not to know" about it and has not adopted measures to prevent CSAM. Yet, it continues to benefit from misleading consumers to believe that they are using consumers' private data to prevent CSAM production.

107.   Jane Doe is also entitled to "recover damages and reasonable attorneys' fees in an action before any appropriate United States district court." U.S.C. § 2421A(c).

108.   Jane Doe reserves the right to supplement these factual allegations after discovery.

## CLAIM II: VIOLATION OF CONSUMER PROTECTION LAWS
### North Carolina General Statutes § 75-1 et seq.

(by Plaintiff on behalf of Class against Defendant)

109.   Jane Doe incorporates by reference all preceding paragraphs and realleges them in support of this claim.

110.   Jane Doe brings this claim individually and on behalf of the Class against Defendant.

111.   In violation of North Carolina General Statutes § 75-1, et seq., Defendant has engaged in and are engaging in "unfair and deceptive acts and practices in or affecting commerce." N.C. Gen. Stat. § 75-1.1.

112.   Apple engaged in unfair practices by developing iCloud so that it prioritizes the privacy of perpetrators of CSAM offenders at the costs of children's safety. By Apple's own knowledge and admission, iCloud is a dangerous product as it is the greatest platform for storing and distributing CSAM. Despite knowing that iCloud is the main place for the proliferation of CSAM, Apple "chose not to know" about it and has not adopted measures to prevent CSAM.

21

113.   Apple engaged in deceptive practices by misleading consumers to believe that they are using consumers' private data to prevent CSAM production.

114.   Under North Carolina General Statutes § 75-16, "[i]f any person shall be injured . . . by reason of any act of thing done by any other person, firm or corporation in violation of the provisions of this Chapter, such person . . . so injured shall have a right of action on account of such injury done." N.C. Gen. Stat. §75-16. Plaintiff and Class are entitled to all compensation for the physical and emotional injuries caused by Apple.

115.   If damages are assessed in such case, judgment shall be rendered in favor of the Plaintiff and Class against Apple for treble the amount fixed by the verdict. N.C. Gen. Stat. § 75-16.

116.   Jane Doe and Class are also entitled to "reasonable attorney fee." Such attorney fee may be taxed as a part of the court costs and payable by the losing party. N.C. Gen. Stat § 75-16.1.

117.   Jane Doe reserves the right to supplement these factual allegations after discovery.

## CLAIM III: CALIFORNIA BUSINESS AND PROFESSIONAL CODES §§ 17200 & 17500 ("UCL & FALSE ADVERTISING")

118.   Plaintiffs restate each and every paragraph of this Complaint as if fully realleged herein.

119.   Plaintiffs on behalf of a National Class allege claims under California Business and Professional Code §§17200 & 17500 et seq. ("UCL & False Advertising").

120.   The UCL and False Advertising laws prohibit unlawful, unfair, or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by California Bus. & Prof. Code §§17200 and 17500 et seq.

121.   Apple engaged in unfair practices by developing iCloud so that it prioritizes

the privacy of perpetrators of CSAM offenders at the costs of children's safety. By Apple's own knowledge and admission, iCloud is a dangerous product as it is the greatest platform for storing and distributing CSAM. Despite knowing that iCloud is the main place for the proliferation of CSAM, Apple "chose not to know" about it and has not adopted measures to prevent CSAM.

122.   Apple engaged in deceptive practices by misleading consumers to believe that they are using consumers' private data to prevent CSAM production.

123.   Like Plaintiff and her guardians, a reasonable user would have relied on Defendant's misrepresentation to the user's detriment.

124.   Pursuant to Cal. Bus. & Prof. Code §17200 and 17500 et seq., Plaintiff and the putative Class seek an order enjoining the above-described wrongful acts and practices of the Defendant and for restitution and disgorgement.

**CLAIM IV: MISREPRESENTATION**

**North Carolina General Statutes § 58-63 et seq.**

(by Plaintiff on behalf of Class against Defendant)

125.   Jane Doe incorporates by reference all preceding paragraphs and realleges them in support of this claim.

126.   Jane Doe brings this claim individual and on behalf of the Class against Defendant.

Apple's Privacy Policy states: [39]

> Apple's Use of Personal Data
> Apple uses personal data to power our services, to process your transactions, to communicate with you, for security and fraud prevention, and to comply with law. . . To protect individuals, employees, and Apple and for loss prevention and to prevent fraud, including to protect individuals, employees, and Apple for the benefit of all our users, and prescreening or scanning uploaded content for potentially illegal content, including child

---

[39] *Id.*

23

*Jane Doe v. Apple, Inc.* – COMPLAINT

sexual exploitation material.[40]

127.   Apple materially represented to Jane Doe that Apple would use Jane Doe's personal data "protect individuals" and conduct "prescreening or scanning uploaded content for potentially illegal content, including child sexual exploitation material."

128.   Apple misrepresented to Jane Doe that it conducted "prescreening or scanning uploaded content for potentially illegal content, including child sexual exploitation material."[41]

129.   Jane Doe, her guardians, and other similarly situated minors, parents, and guardians reasonably relied on Apple's representations.

130.   As a direct result of Apple's actions, Jane Doe suffered physical and emotional harm and is entitled to damages.

131.   Jane Doe reserves the right to supplement these factual allegations after discovery.

## CLAIM V: UNJUST ENRICHMENT

### (by Plaintiff on behalf of Class against Defendant)

132.   Jane Doe incorporates by reference all preceding paragraphs and realleges them in support of this claim.

133.   Jane Doe brings this claim individually and on behalf of the Class against Defendant.

134.   Plaintiff conferred a tangible economic benefit upon Defendant by creating an Apple ID, consuming apps, products, and services within Defendant's ecosystem, and providing access to personal information.

135.   Through the revenue extracted from subscriptions to its services, particularly iCloud, Defendant reaped billions of dollars from a service that facilitated the

---

[40] *Apple Privacy Policy*, APPLE, https://www.apple.com/legal/privacy/en-ww/ (last updated Mar.31, 2024).
[41] *Apple Privacy Policy*, APPLE, https://www.apple.com/legal/privacy/en-ww/ (last updated March 31, 2024).

safekeeping and proliferation of CSAM. Defendant specifically represented in its privacy policy that it engages in "prescreening or scanning uploaded content for potentially illegal content, including child sexual exploitation material."42 Instead, Defendant was enriched by minor users' personal information and consumption of Apple products and services. Plaintiffs subscribed to Defendant's services and bought into its ecosystem while not receiving the full benefit promised in Defendant's privacy policy but was ultimately exposed to harm as a result.

136.   Under these circumstances, permitting Defendant to retain these ill-gotten benefits, extracted from Plaintiffs and members of the Class, would run counter to equity and good conscience.

137.   Accordingly, it would be unjust and inequitable for Defendant to retain the benefit reaped from Plaintiffs and Class members without restitution or disgorgement of valuable goods provided to Defendant, or such other appropriate equitable remedy as appropriate, to Plaintiffs and members of the Class.

138.   Jane Doe reserves the right to supplement these factual allegations after discovery.

## CLAIM VI: NEGLIGENT MISREPRESENTATION AND NEGLIGENT MISREPRESENTATION PER SE

### (by Plaintiff on behalf of Class against Defendant)

139.   Jane Doe incorporates by reference all preceding paragraphs and realleges them in support of this claim.

140.   Jane Doe brings this claim individual and on behalf of the Class against Defendant.

141.   Apple committed the tort of negligent misrepresentation, the elements of which claim are that: (1) the defendant made a false statement or omission of a material

---

42 *Apple Privacy Policy*, APPLE, https://www.apple.com/legal/privacy/en-ww/ (last updated Mar. 31, 2024).

*Jane Doe v. Apple, Inc.* – COMPLAINT

fact; (2) the defendant was without reasonable grounds for believing the statement to be true; (3) the defendant intended the plaintiff to rely on it; (4) the plaintiff reasonably relied on the false information; and (5) the defendant's challenged conduct proximately caused the plaintiff's harm.

142. According to Restatement (Third) of Torts §14, "[a]n actor is negligent per se if, without excuse, the actor violates a statute that is designed to protect against the type of accident the actor's conduct causes, and if the accident victim is within the class of persons the statute is designed to protect.

143. Apple made false representations that were material to Jane Doe, that Apple would use Jane Doe's personal data "protect individuals" and conduct "prescreening or scanning uploaded content for potentially illegal content, including child sexual exploitation material" while they chose not to protect her and similarly situated individuals. Jane Doe and her guardians reasonably relied on the misrepresentation, and consequently experienced damages that were proximately caused by Apple's misrepresentations.

144. When Apple made these statements, it knew or should have known that it did not have safeguards in place to protect children and minors from CSAM.

145. Jane Doe is entitled to compensatory and punitive damages based on Apple's misrepresentations.

146. Jane Doe reserves the right to supplement these factual allegations after discovery.

**CLAIM VII: STRICT PRODUCTS LIABILITY**

(by Plaintiff on behalf of Class against Defendant)

147. Jane Doe incorporates by reference all preceding paragraphs and realleges them in support of this claim.

148. Jane Doe brings this claim individually and on behalf of the Class against

26

*Jane Doe v. Apple, Inc.* – COMPLAINT

Defendant.

149.   At all times relevant to this action, Apple was a manufacturer, distributor, and retailer of the services it provided to consumers.

150.   Under Restatement (Second) of Torts § 402(a), "[o]ne who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if (a) the seller is engaged in the business of selling such a product, and (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold."

151.   As described above, Apple's cloud storage service, iCloud, which it developed, designed, sold, and distributed as part of its subscription-based services business, which has more than one billion paying subscribers.

152.   Due to Apple's business and design choices with respect to iCloud, the service has become a go-to destination for criminals to upload, store, and distribute CSAM, resulting in harm for many minors and children.

153.   In strict liability action based on defective design, a product is considered defective when the benefits of the challenged design do not outweigh the risk of danger inherent in such design.

154.   As demonstrated above, Apple and its leadership had knowledge that its products had become "the greatest platform for distributing child porn."

155.   As a proximate cause of Apple's defective cloud storage service, Jane Doe and members of the Class suffered severe mental harm, leading to mental distress as well as pain and suffering.

156.   Jane Doe and members of the Class are therefore entitled to compensatory damages for emotional pain and distress.

157.   Jane Doe and the Class are entitled to punitive damages based on the willful

*Jane Doe v. Apple, Inc.* – COMPLAINT

and wanton defective design of Apple's iCloud.

158.   Jane Doe reserves the right to supplement these factual allegations after discovery.

**CLAIM VIII:**

**NEGLIGENT PRODUCTS LIABILITY AND NEGLIGENCE PER SE**

(by Plaintiff on behalf of Class against Defendant)

159.   Jane Doe incorporates by reference all preceding paragraphs and realleges them in support of this claim.

160.   Jane Doe brings this claim individual and on behalf of the Class against Defendant.

161.   At all times relevant to this action, Apple was a manufacturer, distributor, and retailer of the services it provided to consumers.

162.   Based on allegations articulated under Claim VII, Apple is also liable under negligence and negligence per se theories for selling defectively designed services.

163.   Apple owed a duty of care (negligence) to Jane Doe and members of the Class to exercise reasonable care to prevent foreseeable and known harms, such as CSAM distribution.

164.   Apple owed a duty of care (negligence per se) to Jane Doe and members of the Class to not violate laws prohibiting the distribution of CSAM and to exercise reasonable care to prevent foreseeable and known harms from CSAM distribution.

165.   Apple breached this duty by providing defective designed services, tools, and products to Jane Doe and members of the Class that render minimal protection from the known harms of CSAM distribution.

166.   Apple's breach of duty was the proximate cause of harm suffered by Jane Doe and members of the Class.

167.   Jane Doe and Class members are entitled to the full extent of compensatory

*Jane Doe v. Apple, Inc.* – COMPLAINT

damages, including personal and emotional harm, as well as punitive damages.

168.   Jane Doe reserves the right to supplement these factual allegations after discovery.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff on behalf of themselves and the putative members of the class defined herein, pray for judgment against the Defendant as follows:

A.   For an order certifying this action and/or common issues raised herein as a "Class Action" under the appropriate provision of Federal Rule of Civil Procedure 23(a), 23(b)(2) and/or (b)(3); designating Plaintiff as Class Representative; and appointing the undersigned to serve as class counsel.

B.   For notice of class certification and of any relief to be disseminated to all Class Members and for such other further notices as this Court deems appropriated under Fed. R. Civ. P. 23(d)(2);

C.   For an order barring Defendant from destroying or removing any computer or similar records which record evidence related to the claims above.

D.   For an order barring Defendant from attempting, on its own or through its agents, to induce any putative Class Members to sign any documents which in any way releases any of the claims of any Putative Class Members;

E.   For granting declaratory and injunctive relief to Plaintiff as permitted by law or equity, including:

    a.   Enjoining Defendant from continuing the unlawful practices as set forth herein, until Apple consents under this court's order to comply with the following:

        i.   Adopt measures to protect children against the storage and distribution of CSAM on the iCloud,

29

ii.   Adopt measures to ensure that the stated privacy policies are consistent with Apple's business practices,

iii.   Adopt measures to create easily accessible reporting in iCloud for children and parents to report inappropriate images and harmful situations.

iv.   Comply with quarterly third-party monitoring to ensure that the iCloud product has reasonably safe and easily accessible mechanisms to combat CSAM and to be transparent about aligning stated privacy policies with its practices.

b.  Directing Defendant to identify, with Court supervision, victims of its conduct so as to pay them compensatory damages, punitive damages, restitution and/or disgorgement of all monies acquired by Defendant by means of any act or practice declared by the Court to be wrongful;

F.   For an award of compensatory damages in favor of Plaintiffs and Class againstDefendant, jointly and severally, in the amount exceeding $5,000,000, to be determined by proof of all injuries and damages described herein and to be proven at trial;

G.   Awarding Plaintiffs and the Class punitive damages to the extent allowable by law, in an amount to be proven at trial;

H.   Awarding restitution and disgorgement of Defendant's revenues to the Plaintiff and the proposed Class members; respectfully requests that this Court grant the following relief:

I.   Awarding Plaintiffs and the Class reasonable attorney's fees and costs of prosecuting this action, including expert witness fees;

J.      Awarding pre-judgment and post-judgment interest, and providing such

other relief as may be just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a trial by jury for all issues a jury may properly decide
and for all of the requested relief that a jury may award.

Dated: <u>August 13, 2024</u>                    Respectfully submitted,

<u>/s/ John Buche</u>
John Buche (SBN 239477) (Local Counsel)
Byron Ma (SBN 299706) (Local Counsel)
**THE BUCHE LAW FIRM, P.C.**
901 S MoPac Expy., Bldg. 1, Ste. 300
Austin, TX 78746
jbuche@buchelaw.com
bma@buchelaw.com

Juyoun Han (*Pro Hac Vice* Forthcoming)
Eric Baum (*Pro Hac Vice* Forthcoming)
Patrick K. Lin (*Pro Hac Vice* Forthcoming)
**EISENBERG & BAUM, LLP**
24 Union Square East, PH
New York, NY 10003
(212) 353-8700
jhan@eandblaw.com

*Attorneys for Plaintiffs*

31

*Jane Doe v. Apple, Inc.* – COMPLAINT