Ashley M. Simonsen (Bar No. 275203)
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, California 90067
Telephone: (424) 332-4800
Facsimile: (424) 332-4749
Email: asimonsen@cov.com

David N. Sneed (*pro hac vice*)
COVINGTON & BURLING LLP
One CityCenter, 850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: (202) 662 5027
Facsimile: (202) 778-5007
Email: dsneed@cov.com

Isaac D. Chaput (Bar No. 326923)
Amy S. Heath (Bar No. 312516)
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, California 94105
Telephone: (415) 591-6000
Facsimile: (415) 591-6091
Email: ichaput@cov.com
Email: aheath@cov.com

*Attorneys for Defendant Apple Inc.*

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JANE DOE,<br><br>Plaintiff,<br><br>v.<br><br>APPLE INC.<br><br>Defendant. | Civil Case No.: 5:24-cv-05107-EKL<br><br>**DEFENDANT APPLE INC.'S MOTION TO DISMISS**<br><br>Date: February 26, 2025<br>Time: 10:00 a.m.<br>Place: Courtroom 7<br>Judge: Hon. Eumi K. Lee |

**TABLE OF CONTENTS**

I.    INTRODUCTION AND STATEMENT OF THE ISSUES...........................................1

II.   BACKGROUND ...............................................................................................2

      A.    iMessage, iCloud, and Safety Features ............................................2

      B.    Unknown Snapchat Users Allegedly Sent CSAM to Plaintiff.......................4

III.  LEGAL STANDARD.........................................................................................4

IV.   ARGUMENT .....................................................................................................5

      A.    Section 230 of the Communications Decency Act Bars All of Plaintiff's Claims. ...........5

            1.    iCloud and iMessage are Interactive Computer Services. ...................................5

            2.    The CSAM and Messages Here Are Third-Party Content.....................................7

            3.    Plaintiff's Claims Treat Apple as a Publisher or Speaker.....................................7

      B.    Plaintiff Does Not State a Trafficking Claim (Claim I)..........................11

            1.    The Complaint Does Not Allege Any Act of Prostitution.................................11

            2.    The Complaint Does Not Allege Sex Trafficking. ...........................................12

            3.    The Complaint Does Not Allege Intent. ...........................................................12

      C.    The Court Should Dismiss Plaintiff's Product Liability Claims (Claims VII, VIII). .......13

            1.    iCloud Is Not a Product Within the Meaning of Product Liability Law.............13

            2.    North Carolina Law Does Not Recognize Strict Product Liability (Claim VII). 15

            3.    The Negligent Product Liability Claim Fails for Lack of a Cognizable Duty (Claim VIII). ...................................................................................16

            4.    Plaintiff Does Not Sufficiently Allege Negligence Per Se (Claim VIII).............17

      D.    The Consumer Protection and Misrepresentation Claims Fail (Claims II, III, IV, VI)...17

            1.    Plaintiff Does Not Allege an Actionable Misrepresentation (Claims II, III, VI). 18

            2.    Plaintiff Does Not Allege an Actionable Unfair Practice (Claims II, III). ..........20

            3.    The UCL and FAL Claims Fail for Lack of Equitable Jurisdiction (Claim III)...23

            4.    Plaintiff Lacks Statutory Standing Under the UCL (Claim III).........................23

            5.    The North Carolina Insurance Practices Claim is Inapplicable (Claim IV). .......23

E.    Plaintiff Cannot Establish that Apple Proximately Caused Her Injuries (Claims II, III, VI, VII, VIII)................................................................................................24

F.    Plaintiff Does Not Allege Apple Was Unjustly Enriched at Her Expense (Claim V).....25

V.    CONCLUSION....................................................................................................................25

1

# TABLE OF AUTHORITIES

2

**Cases**

3

*In re Adobe Sys., Inc. Priv. Litig.*,
    66 F. Supp. 3d 1197 (N.D. Cal. 2014) ............................................................23

4

5

*Allianz Glob. Risks US Ins. Co. v. Travelers Prop. Cas. Co. of Am.*,
    2022 WL 2835426 (W.D.N.C. July 20, 2022).................................................23

6

7

*Apex Directional Drilling, LLC v. SHN Consulting Eng'rs & Geologists, Inc.*,
    119 F. Supp. 3d 1117 (N.D. Cal. 2015) ..........................................................16

8

9

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009).............................................................................................4

10

*Barnes v. Yahoo!, Inc.*,
    570 F.3d 1096 (9th Cir. 2009) .................................................................. *passim*

11

12

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007).............................................................................................4

13

14

*Beyer v. Symantec Corp.*,
    333 F. Supp. 3d 966 (N.D. Cal. 2018) ............................................................24

15

16

*Blackmon v. Tri-Arc Food Sys., Inc.*,
    782 S.E.2d 741 (N.C. App. 2016)....................................................................24

17

*Brinkman v. Barrett Kays & Assocs., P.A.*,
    575 S.E.2d 40 (N.C. App. 2003)......................................................................24

18

19

*Brown v. USA Taekwondo*,
    11 Cal. 5th 204 (2021) .....................................................................................16

20

*Bumpers v. Cmty. Bank of N. Virginia*,
    747 S.E.2d 220 (N.C. 2013).................................................................... *passim*

21

22

*Calise v. Meta Platforms, Inc.*,
    103 F.4th 732 (9th Cir. 2024) ........................................................................8, 9

23

24

*Camacho v. JLG Indus. Inc.*,
    93 Cal. App. 5th 809 (2023) ............................................................................24

25

*Carafano v. Metrosplash.com, Inc.*,
    339 F.3d 1119 (9th Cir. 2003) ...........................................................................5

26

27

*Cel-Tech Commc'ns, Inc. v. L. A. Cellular Tel. Co.*,
    20 Cal. 4th 163 (1999) .....................................................................................20

28

*Coffer v. Standard Brands, Inc.*,
    226 S.E. 2d 534 (N.C. Ct. App. 1976) ....................................................14

*Corradino v. Liquidnet Holdings Inc.*,
    2021 WL 2853362 (S.D.N.Y. July 8, 2021) .............................................12

*Crosby v. Twitter, Inc.*,
    921 F.3d 617 (6th Cir. 2019) .....................................................................24

*Cross v. Ciox Health, LLC*,
    438 F. Supp. 3d 572 (E.D.N.C. 2020)........................................................19

*Datres v. Winfree*,
    2024 WL 1756160 (W.D. Mich. Apr. 24, 2024) .......................................11

*Davis v. HSBC Bank Nevada, N.A.*,
    691 F.3d 1152 (9th Cir. 2012) ......................................................20, 21, 22

*Day v. TikTok, Inc.*,
    2022 WL 595745 (N.D. Ill. Feb. 28, 2022) ..............................................12

*Dinan v. Sandisk LLC*,
    2019 WL 2327923 (N.D. Cal. May 31, 2019).............................................19

*Direct Sales Co. v. United States*,
    319 U.S. 703 (1943)....................................................................................13

*Doe #1 v. Twitter, Inc.*,
    2023 WL 3220912 (9th Cir. May 3, 2023) ................................................12

*Doe v. Internet Brands, Inc.*,
    824 F.3d 846 (9th Cir. 2016) .......................................................................2

*Doe v. MySpace, Inc.*,
    474 F. Supp. 2d 843 (W.D. Tex. 2007).....................................................16

*Doe v. MySpace, Inc.*,
    528 F.3d 413 (5th Cir. 2008) .......................................................................8

*Doe v. Reddit, Inc.*,
    2021 WL 4348731 (C.D. Cal. July 12, 2021)........................................8, 10

*Doe v. Snap, Inc.*,
    2022 WL 2528615 (S.D. Tex. July 7, 2022)................................................9

*Durden v. United States*,
    736 F.3d 296 (4th Cir. 2013) .....................................................................16

*Dyroff v. Ultimate Software Grp., Inc.*,
    934 F.3d 1093 (9th Cir. 2019) ...............................................................5, 16

iv

*Est. of B.H. v. Netflix, Inc.,*
2022 WL 551701 (N.D. Cal. Jan. 12, 2022) ...................................................................15

*In re Facebook, Inc.,*
625 S.W.3d 80 (Tex. 2021).........................................................................................9, 10

*Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC,*
521 F.3d 1157 (9th Cir. 2008) ......................................................................................5, 6

*Fields v. Twitter, Inc.,*
217 F. Supp. 3d 1116 (N.D. Cal. 2016) .........................................................................6, 8

*Fields v. Twitter, Inc.,*
881 F.3d 739 (9th Cir. 2018) ....................................................................................24, 25

*Fitzgerald Fruit Farms LLC v. Aseptia, Inc.,*
527 F. Supp. 3d 790 (E.D.N.C. 2019)........................................................................18, 19

*Flores v. Uber Techs.,*
2022 Cal. Super. LEXIS 9648 (Cal. Super. Ct. Mar. 22, 2022) ............................................15

*Force v. Facebook, Inc.,*
934 F.3d 53 (2d Cir. 2019)................................................................................................5

*FTC. v. Neovi, Inc.,*
604 F.3d 1150 (9th Cir. 2010) .........................................................................................22

*Gavra v. Google Inc.,*
2013 WL 3788241 (N.D. Cal. July 17, 2013).....................................................................16

*Green v. Am. Online (AOL),*
318 F.3d 465 (3d Cir. 2003)..............................................................................................9

*Guthrie v. Transamerica Life Ins. Co.,*
561 F. Supp. 3d 869 (N.D. Cal. 2021) ...............................................................................23

*Hairston v. Alexander Tank & Equip. Co.,*
311 S.E.2d 559 (N.C. 1984)............................................................................................24

*Henderson v. U.S. Fid. & Guar. Co.,*
488 S.E.2d 234 (N.C. 1997)............................................................................................20

*Herrick v. Grindr, LLC,*
306 F. Supp. 3d 579 (S.D.N.Y. 2018)...............................................................................10

*Hodsdon v. Mars, Inc.,*
891 F.3d 857 (9th Cir. 2018) ...........................................................................20, 21, 23

*Hoff v. Vacaville Unified Sch. Dist.,*
968 P.2d 522 (Cal. 1998)................................................................................................17

v

*Jackson v. Airbnb, Inc.*,
  639 F. Supp. 3d 994 (C.D. Cal. 2022) .......................................................14

*James v. Meow Media, Inc.*,
  300 F.3d 683 (6th Cir. 2002) .............................................................15, 16

*Johnson v. Glock, Inc.*,
  2021 WL 428635 (N.D. Cal. Feb. 8, 2021) ...............................................19

*Jones v. Awad*,
  39 Cal. App. 5th 1200 (2019) ...................................................................17

*Kearns v. Ford Motor Co.*,
  567 F.3d 1120 (9th Cir. 2009) .........................................................4, 5, 19

*Khoja v. Orexigen Therapeutics, Inc.*,
  899 F.3d 988 (9th Cir. 2018) .......................................................................5

*Kimzey v. Yelp! Inc.*,
  836 F.3d 1263 (9th Cir. 2016) .................................................................6, 7

*Kindred Studio Illustration & Design, LLC v. Elec. Commc'n Tech., LLC*,
  2018 WL 6985317 (C.D. Cal. Dec. 3, 2018) .............................................22

*Kolbek v. Twenty First Century Holiness Tabernacle Church, Inc.*,
  2013 WL 6816174 (W.D. Ark. Dec. 24, 2013) ..........................................12

*L.W. v. Snap Inc.*,
  675 F. Supp. 3d 1087 (S.D. Cal. 2023).........................................6, 8, 9, 10

*Langley v. Guiding Hands Sch., Inc.*,
  2021 WL 1212713 (E.D. Cal. Mar. 31, 2021) ...........................................14

*Modisette v. Apple Inc.*,
  30 Cal. App. 5th 136 (2018) .....................................................................24

*Moore v. Trader Joe's Co.*,
  4 F.4th 874 (9th Cir. 2021) .......................................................................19

*Murray v. Nationwide Mut. Ins. Co.*,
  472 S.E.2d 358 (N.C. App. 1996)..............................................................24

*Nacarino v. Chobani, LLC*,
  668 F. Supp. 3d 881 (N.D. Cal. 2022) .......................................................19

*Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Cambridge Integrated Servs. Grp., Inc.*,
  171 Cal. App. 4th 35 (2009) ................................................................18, 19

*Novak v. Cont'l Tire N. Am.*,
  22 Cal. App. 5th 189 (2018) .....................................................................24

*Osborn v. Irwin Mem'l Blood Bank,*
    5 Cal. App. 4th 234 (1992) .................................................................24

*Parziale v. HP, Inc.,*
    445 F. Supp. 3d 435 (N.D. Cal. 2020) .......................................21, 22

*Pierson v. Sharp Mem'l Hosp., Inc.,*
    216 Cal. App. 3d 340 (1989) .............................................................14

*Primerica Life Ins. Co. v. James Massengill & Sons Constr. Co.,*
    712 S.E.2d 670 (N.C. App. 2011).......................................................25

*Red Hill Hosiery Mill, Inc. v. MagneTek, Inc.,*
    530 S.E.2d 321 (N.C. App. 2000).......................................................24

*Republican Nat'l Comm. v. Google LLC,*
    2024 WL 3595538 (E.D. Cal. July 31, 2024) ...................................23

*Russell v. Walmart, Inc.,*
    680 F. Supp. 3d 1130 (N.D. Cal. 2023) .............................................25

*Sharma v. Volkswagen AG,*
    524 F. Supp. 3d 891 (N.D. Cal. 2021) ...............................................25

*Sonner v. Premier Nutrition Corp.,*
    971 F.3d 834 (9th Cir. 2020) .............................................................23

*In re Static Random Access Memory (SRAM) Antitrust Litig.,*
    580 F. Supp. 2d 896 (N.D. Cal. 2008) ...............................................13

*Stein v. Asheville City Bd. of Educ.,*
    626 S.E.2d 263 (N.C. 2006)................................................................17

*Stoddard v. Wyeth, Inc.,*
    630 F. Supp. 2d 631 (E.D.N.C. 2009).................................................16

*Suntrust Bank v. Bryant/Sutphin Props., LLC,*
    732 S.E.2d 594 (N.C. App. 2012)................................................19, 20

*TransUnion LLC v. Ramirez,*
    594 U.S. 413 (2021)............................................................................25

*Twitter, Inc. v. Taamneh,*
    598 U.S. 471 (2023)............................................................................25

*United States v. Rodgers,*
    461 U.S. 677 (1983)............................................................................18

*Warzynski v. Empire Comfort Sys., Inc.,*
    401 S.E.2d 801 (N.C. Ct. App. 1991)................................................14

*Winter v. G.P. Putnam's Sons,*
  938 F.2d 1033 (9th Cir. 1991) ............................................................14

*Woodhull Freedom Found. v. United States,*
  72 F.4th 1286 (D.C. Cir. 2023) .....................................................11, 12

*Zaback v. Kellogg Sales Co.,*
  2020 WL 6381987 (S.D. Cal. Oct. 29, 2020) ....................................23

*Ziencik v. Snap, Inc.,*
  2023 WL 2638314 (C.D. Cal. 2023) ...................................................14

*In re Zoom Video Commc'ns Inc. Priv. Litig.,*
  525 F. Supp. 3d 1017 (N.D. Cal. 2021) .......................................6, 7, 8

**Statutes**

15 U.S.C. § 45 ..................................................................20, 20, 21, 22

18 U.S.C. § 1591 .....................................................................................12

18 U.S.C. § 2421A ......................................................................... *passim*

47 U.S.C. § 230 .............................................................................. *passim*

Cal. Bus. & Prof. Code § 17200 .................................................... *passim*

Cal. Civ. Code § 1714.45(c) .................................................................13

N.C. Gen. Stat. Ann. §§ 58-63 ............................................................23

N.C. Gen. Stat. Ann. § 75–1.1 ............................................................18

N.C. Gen. Stat. Ann. § 99B-1 ......................................................13, 16

**Other Authorities**

Fed. R. Civ. P. 8 .....................................................................................19

Fed. R. Civ. P. 9(b) ..........................................................................17, 19

Fed. R. Civ. P. 12(b)(6) ...........................................................................5

2 Owen & Davis on Prods. Liab., § 17:28 (May 2023 Update) .................................14

Black's Law Dictionary (10th ed. 2014) ..............................................11

Merriam-Webster Dictionary .............................................................18

Restatement (Third) of Torts: Prod. Liab., § 19 (Am. L. Inst. 1998) ......................13, 14

## NOTICE OF MOTION AND MOTION TO DISMISS

PLEASE TAKE NOTICE that, on February 26, 2025 at 10:00 a.m., Defendant Apple Inc. will and hereby does move for an order dismissing with prejudice Plaintiff's Complaint (Dkt. 1, 6) under Federal Rules of Civil Procedure 8, 9(b), and 12(b)(6).  This Motion is based on this Notice; the accompanying Memorandum of Points and Authorities; the Complaint; documents incorporated by reference or otherwise subject to judicial notice; and any other matters presented at the time of the hearing.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION AND STATEMENT OF THE ISSUES

Child sexual abuse material is abhorrent.  Apple has worked hard to fight the dissemination of child sexual abuse material ("CSAM") on its services, including by developing innovative technologies to help parents control their children's experiences and to help children stay safe while using these services.  Apple also offers industry-leading privacy and data security features on its devices and in iCloud, including end-to-end encryption.

In this case, Plaintiff, a minor, alleges that two unidentified Snapchat users sent her CSAM videos that, "[u]pon information and belief, were sent to Plaintiff as iCloud links in an iMessage."  *See* Compl. ¶ 80.  Plaintiff alleges that Apple—based solely on operating iCloud—is liable for sex trafficking, product liability, consumer protection, and misrepresentation violations arising from the unlawful and repulsive actions of these unknown third-party Snapchat users.  But even the Complaint acknowledges that Apple proposed developing a technology that could detect known CSAM while preserving users' privacy and security.  *See id.* ¶¶ 51-53.  And after extensive consultation with human rights organizations, privacy and security technologists, child safety advocates, and academics, Apple deployed other technological measures to deter the spread of CSAM while choosing not to implement its proposed technology or begin scanning users' data.  Apple reached this decision to avoid risks that these technologies pose to users' security and privacy, such as by introducing new threat vectors or enabling political surveillance.

Plaintiff's disagreement with that decision does not provide a basis for the broad range of claims in the Complaint.  The Court should dismiss the Complaint for several reasons:

First, Section 230 of the Communications Decency Act bars all of Plaintiff's claims, which are premised entirely on third-party content.  Section 230 was enacted to "protect[] websites from liability for

material posted on the website by someone else," *Doe v. Internet Brands, Inc.*, 824 F.3d 846, 850 (9th Cir. 2016), and bars claims against technology companies for decisions regarding "reviewing" and "deciding whether to publish or to withdraw from publication third-party content," *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1102 (9th Cir. 2009).  That is precisely what Plaintiff seeks to hold Apple liable for here.

Second, Plaintiff has not stated a sex trafficking claim under the Allow States and Victims to Fight Online Sex Trafficking Act of 2017 ("FOSTA") because she has not alleged the elements of the claim: no act of prostitution, no commercial sex act, and no intent by Apple to promote prostitution.

Third, Plaintiff's product liability claims are fundamentally flawed: iCloud is not a tangible "product."  Besides that threshold issue, North Carolina does not recognize a cause of action for strict liability, and Plaintiff has not alleged any cognizable duty to support a negligence claim or any statutory basis for a negligence per se claim.

Fourth, Plaintiff's consumer protection and misrepresentation claims fail because Plaintiff has not identified any actionable misrepresentation, pleaded reasonable or actual reliance, alleged an actionable unfair practice, or established equitable jurisdiction or statutory standing.  One claim applies only to the insurance industry, and so is wholly inapplicable here, and another, "negligent misrepresentation per se," is not a cause of action under any state's law.

Fifth, Plaintiff has not adequately alleged that Apple proximately caused Plaintiff's alleged injuries.  Instead, the criminal acts of the unidentified third-party Snapchat users caused the harm here.

Finally, the unjust enrichment claim must be dismissed because Plaintiff does not allege that Apple was unjustly enriched at her expense.

No amendments could cure these defects, so the Complaint should be dismissed with prejudice.

## II.    BACKGROUND[1]

### A.    iMessage, iCloud, and Safety Features

Apple's iMessage is an app that allows iPhone and iPad users (among others) to send and receive texts, photos, videos, audio messages, and documents.  Compl. ¶ 81.  Apple's iCloud is a service that securely stores users' photos, files, notes, and other data in the cloud and keeps it up to date across devices,

---

[1] For this Motion, Apple accepts as true, without conceding, the factual allegations in the Complaint.

DEFENDANT APPLE INC.'S MOTION TO DISMISS                                    Case No. 5:24-cv-05107-EKL

automatically. *Id.* ¶¶ 4–7. iCloud enables users to share files and photos with friends and family, including by sending iCloud links. *Id.* ¶¶ 4, 28. iCloud also includes an email service and a website, which allows users to access their email, photos, and files from anywhere. *Id.* ¶¶ 4, 30, 61; Request for Judicial Notice Ex. 1 at 2–3 (iCloud Data Security Overview); Ex. 2 at 2–3 (iCloud Terms and Conditions).

To protect users' privacy and security, iCloud data is encrypted. Compl. ¶ 59 n.33. Since 2022, users have had the choice between two levels of data protection. *Id.* ¶ 59. With Standard Data Protection, iCloud data is encrypted but the encryption keys are secured in Apple data centers, so Apple can decrypt users' data on their behalf whenever they need it, such as when they sign in on a new device or restore from a backup. *Id.* ¶¶ 60, 64. For additional privacy and security, certain data categories (such as Health data) are end-to-end encrypted, meaning the encryption keys are stored only on users' devices, and so Apple cannot access the data. *Id.* ¶ 61; RJN Ex. 1 at 1. With Advanced Data Protection, additional data categories (such as iCloud Backup and Photos) are end-to-end encrypted. Compl. ¶ 61. Data that is end-to-end encrypted would remain secure even if there were a data breach in the cloud. RJN Ex. 1 at 1.

The iCloud Terms & Conditions prohibit users from using iCloud to "engage in any illegal activity" or to "upload, . . . transmit, store, [or] share . . . any Content that is unlawful, harassing, threatening, harmful, . . . obscene, vulgar, . . . or otherwise objectionable." RJN Ex. 2 at Section V.B. They also notify users that they may report content on iCloud they believe to be inappropriate or otherwise a violation of the Terms & Conditions by emailing abuse@iCloud.com. *See id.* at V.G.

Apple devices, including iPads, also feature a range of controls and features to help protect children. First, for the child to access certain services, a parent must create a child's Apple Account. *See* RJN Ex. 3 at 5 (Privacy Policy). As part of that process, the parent is presented with the Family Privacy Disclosure for Children, which explains that by default, accounts for children under the age of 13 have the Ask to Buy feature turned on. Ask to Buy lets parents review and approve their child's downloads and purchases, including of apps from the App Store like Snapchat. RJN Ex. 4 at 2–3 (Family Disclosure). Screen Time lets parents limit their child's access to certain features or apps, including limiting iMessage to only send and receive messages from saved contacts. *Id.*; RJN Ex. 5 (iPad User Guide, Communication Limits).

Accounts for children under the age of 13 also have the Communication Safety feature turned on

1   by default.  Compl. ¶ 33 & n.18; RJN Ex. 6 at 1 (Communication Safety webpage).  When Communication

2   Safety detects nudity, it "blurs the photo or video before [the] child can view it on their device."  RJN Ex.

3   6 at 1.  "Communication Safety also provides guidance and age-appropriate resources to help [children]

4   make a safe choice, including the choice to contact someone that they trust."  *Id.*  This includes "several

5   ways to get help—including leaving the conversation, blocking the contact, leaving a group message, and

6   accessing online safety resources—and reassures the child that it's okay if they don't want to view the

7   photo or video, or if they want to leave the conversation."  *Id.* at 2–3.  Apple enables developers to integrate

8   Communication Safety into their own apps.  RJN Ex. 7 at 2 (E. Neuenschwander Email).

9   **B.    Unknown Snapchat Users Allegedly Sent CSAM to Plaintiff.**

10   Plaintiff, a North Carolina resident, alleges she received an iPad as a gift from a family member.

11   Compl. ¶¶ 71, 74.  Soon after, she created a Snapchat account.  *Id.* ¶ 76.  Two unidentified Snapchat users

12   "requested to be friends with Plaintiff" and "asked for Plaintiff's iCloud ID."  *Id.* ¶¶ 77-78.  Plaintiff

13   alleges that "[o]ver the course of two to three days, these two unknown users sent Plaintiff approximately

14   five videos containing CSAM via iMessage."  *Id.* ¶ 79.  She alleges "upon information and belief" that

15   the videos were sent using iCloud links.  *Id.* ¶ 80.  Plaintiff alleges the same users then solicited Plaintiff

16   to make CSAM of herself, *id.* ¶ 85, but does not allege she actually made such material.  The Complaint

17   does not say whether Plaintiff knows the identity of the Snapchat users or whether they have been

18   criminally prosecuted for their conduct.

19   **III.    LEGAL STANDARD**

20   To state a plausible claim for relief, a plaintiff must allege "sufficient factual matter" that, taken

21   as true, "allows the court to draw the reasonable inference that the defendant is liable for the misconduct

22   alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

23   556 (2007)).  A "formulaic recitation of the elements" of a claim is not entitled to the presumption of truth.

24   *Iqbal*, 556 U.S. at 681.  And where a plaintiff alleges insufficient facts or makes allegations that disprove

25   or demonstrate the implausibility of the asserted claim, dismissal is proper.  *See, e.g.*, *Twombly*, 550 U.S.

26   at 570.  In addition, a plaintiff alleging claims sounding in fraud "must state with particularity the

27   circumstances constituting fraud."  *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009)

28   (quoting Fed. R. Civ. P. 9(b)).  "Averments of fraud must be accompanied by 'the who, what, when,

1  where, and how' of the misconduct charged." *Id.* (cleaned up).  When deciding a Rule 12(b)(6) motion,

2  the Court may consider documents that are incorporated by reference in the complaint or subject to judicial

3  notice.  *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018).

4  **IV.    ARGUMENT**

5      **A.    Section 230 of the Communications Decency Act Bars All of Plaintiff's Claims.**

6      Section 230 of the CDA bars Plaintiff's claims, each of which seeks to impose liability on Apple

7  for whether and how it monitors for, prevents, warns about, and removes content that third parties store

8  and share using iCloud.  Under Section 230, "[n]o provider . . . of an interactive computer service shall be

9  treated as the publisher or speaker of any information provided by another information content provider."

10  47 U.S.C. § 230(c)(1).  There also is a broad preemption provision: "[n]o cause of action may be brought

11  and no liability may be imposed under any State . . . law that is inconsistent with this section."  *Id.*

12  § 230(e)(3).

13      "Congress made a policy choice not to deter harmful online speech through the separate route of

14  imposing tort liability on companies that serve as intermediaries for other parties' potentially injurious

15  messages."  *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1123 (9th Cir. 2003) (cleaned up).  As a

16  result, Section 230 "should be construed broadly in favor of immunity."  *Force v. Facebook, Inc.*, 934

17  F.3d 53, 64 (2d Cir. 2019) (collecting cases); *see also Fair Hous. Council of San Fernando Valley v.*

18  *Roommates.Com, LLC*, 521 F.3d 1157, 1174–75 (9th Cir. 2008) (en banc) (narrow reading would "cut the

19  heart out of section 230 by forcing websites to face death by ten thousand duck-bites, fighting off claims

20  that they promoted or encouraged—or at least tacitly assented to—the illegality of third parties").

21      The Ninth Circuit has established a three-part test to determine whether Section 230 immunity

22  applies.  Under that test, immunity exists for "(1) a provider or user of an interactive computer service

23  (2) whom a plaintiff seeks to treat, under a state law cause of action, as a publisher or speaker (3) of

24  information provided by another information content provider."  *Dyroff v. Ultimate Software Grp., Inc.*,

25  934 F.3d 1093, 1097 (9th Cir. 2019) (cleaned up).  All three prongs are satisfied here.

26      **1.    iCloud and iMessage Are Interactive Computer Services.**

27      Under the first prong of Section 230, "[t]he term 'interactive computer service' means any

28  information service, system, or access software provider that provides or enables computer access by

1    multiple users to a computer server, including specifically a service or system that provides access to the

2    Internet[.]"    47 U.S.C. § 230(f)(2).    iCloud falls squarely within this definition, which is to be

3    "interpret[ed] expansively."   *See Kimzey v. Yelp! Inc.*, 836 F.3d 1263, 1268 (9th Cir. 2016) (cleaned up).

4    Plaintiff effectively concedes this prong by bringing a claim under 18 U.S.C. § 2421A, which applies only

5    if Apple provides "an interactive computer service (as such term is defined in . . . section 230(f) the

6    Communications Act of 1934[)]."  18 U.S.C. § 2421A(b).

7            iCloud qualifies as an "interactive computer service" for at least three reasons:

8            To start, iCloud plainly enables multiple users to access a computer server.  In *Does #1-50 v.*

9    *Salesforce.com, Inc.*, for example, the California Court of Appeal held that Salesforce's software allowed

10   multiple users to access a server where it "included a secure cloud storage database" to store business

11   information and licenses to access the cloud database.  2021 WL 6143093, at *6 (Cal. Ct. App. Dec. 30,

12   2021) (unpublished) (cleaned up).  Here, the Complaint alleges that users can share content by sending

13   iCloud links to one another, Compl. ¶¶ 27–31, which necessarily means multiple users access the same

14   iCloud servers to access that content.  Indeed, courts routinely apply Section 230 when an internet service

15   permits multiple users to send information to one another.  *See, e.g.*, *L.W. v. Snap Inc.*, 675 F. Supp. 3d

16   1087, 1095 (S.D. Cal. 2023) (finding that Snapchat is interactive computer service because it "permits its

17   users to share photos and videos through [the company's] servers and the internet" (cleaned up)); *Fields*

18   *v. Twitter, Inc.*, 217 F. Supp. 3d 1116, 1128 (N.D. Cal. 2016) (*Fields I*), *aff'd*, 881 F.3d 739 (9th Cir. 2018)

19   (*Fields II*) (collecting cases); *In re Zoom Video Commc'ns Inc. Priv. Litig.*, 525 F. Supp. 3d 1017, 1030

20   (N.D. Cal. 2021) (similar).

21           In addition, iCloud is a service, system, or software that "provides access to the Internet."  47

22   U.S.C. § 230(f)(2).  The Complaint alleges that iCloud is a service used to store material via the internet.

23   *See* Compl. ¶¶ 4–6.  It alleges that users can then access that data, including "across devices."  *Id.* ¶ 4.

24   Indeed, it alleges that iCloud is the "only" way to back up iPhones and iPads "to the internet."  *Id.* ¶ 6.

25   For this reason alone, it qualifies as an interactive computer service.  *See, e.g.*, *L.W.*, 675 F. Supp. 3d at

26   1095.

27           Finally, iCloud is, among other things, a website, and "the most common interactive computer

28   services are websites."  *Roommates*, 521 F.3d at 1162 n.6.  The Complaint references "iCloud.com,"

Compl. ¶ 30, the website from which users can access certain iCloud features. A website like iCloud.com is a prototypical example of an interactive computer service. *See, e.g.*, *Kimzey*, 836 F.3d at 1268 (Yelp website qualifies).

To resist this straightforward conclusion, the Complaint alleges without elaboration that Section 230 does not apply "[b]ecause iCloud is exclusively used for storage." Compl. ¶ 8. But even Plaintiff alleges that users not only store content on iCloud but *share* it with others via iCloud links—indeed, the sharing of iCloud links appears to be the basis for Plaintiff's allegation that she was harmed. *See id.* ¶¶ 27–31. In any event, this is a distinction without a difference: even if the interactive computer service were used for storage (exclusively or not), Section 230 applies. Whether something is an interactive computer service does not turn on whether it is used for private storage, public social interactions, or other uses. What matters is that it enables access by multiple users to a server. *See, e.g.*, *Zoom*, 525 F. Supp. 3d at 1030 ("[T]he public/private nature of a [service] is immaterial to whether [it] is an 'interactive computer service.' Section 230 requires merely that [the service] 'provides or enables computer access by multiple users to a computer server.'" (cleaned up)); *Salesforce*, 2021 WL 6143093, at *6 (applying Section 230 to "cloud storage database").[2]

### 2. The CSAM and Messages Here Are Third-Party Content.

The second prong of the Section 230 inquiry is also readily satisfied here, as the CSAM and messages alleged in the Complaint are "information provided by another"—the unidentified Snapchat users—not created by Apple. *See* Compl. ¶¶ 79–85. Nothing in the Complaint suggests otherwise.

### 3. Plaintiff's Claims Treat Apple as a Publisher or Speaker.

The third prong is satisfied, too: Plaintiff's claims treat Apple as a publisher or speaker of the third-party content because they would hold Apple liable for not reviewing and removing that content. In analyzing the third prong, "what matters is not the name of the cause of action," but rather "whether the cause of action inherently requires the court to treat the defendant as the 'publisher or speaker' of content provided by another." *Barnes*, 570 F.3d at 1101–02. In turn, "publication" includes "reviewing" and

---

[2] iMessage is likewise an interactive computer service for purposes of Section 230. Apple does not understand Plaintiff's claims to challenge iMessage itself, but if the Opposition argues otherwise, Apple reserves the right to address those arguments.

"deciding whether to publish or to withdraw from publication third-party content." *Id.* at 1102. It also includes "features that are part and parcel of the overall design and operation of the website." *Fields I*, 217 F. Supp. 3d at 1124 (cleaned up). Ninth Circuit law is clear: "[A]ny activity that can be boiled down to deciding whether to exclude material that third parties seek to post online is perforce immune under section 230." *Roommates*, 521 F.3d at 1170–71. Put differently, Section 230 immunity attaches whenever the duty the claims seek to impose on a defendant "obliges the defendant to monitor third-party content— or else face liability." *Calise v. Meta Platforms, Inc.*, 103 F.4th 732, 742 (9th Cir. 2024) (cleaned up); *see also L.W.*, 675 F. Supp. 3d at 1097 (finding Section 230 barred claims based on Snapchat's availability on the App Store ).

Courts routinely find that claims seeking to hold internet service providers liable for CSAM, or other abusive third-party content, are subject to Section 230 immunity. As one court explained in a similar case involving alleged failure to prevent CSAM distribution, Section 230 applied "[b]y definition" because the "theories of liability plainly turn on Defendants' alleged failure to monitor and remove third-party content." *L.W.*, 675 F. Supp. 3d at 1096. The court reasoned that the alleged "failure to remove CSAM distributed on [Defendant's platform] by third parties . . . involve[s] reviewing and deciding whether to publish or to withdraw from publication third-party content." *Id.* (cleaned up). As another court explained, an operator of a platform that "merely provided neutral tools for navigating its service" is immunized by Section 230 even where third parties distribute disturbing content using that service: "appalling as this content is, [the defendant's] failure 'to edit or block user-generated content' is the very activity Congress sought to immunize." *Zoom*, 525 F. Supp. 3d at 1035 (cleaned up). Or as a third said, claims that a service provider "permitt[ed] users to upload videos and images of Plaintiffs (and/or their daughters)," enabled "distribution of private sexually explicit materials [that] stem[] from users being permitted to upload the relevant videos and images," and "knowingly tolerat[ed] [CSAM] on its website" were all "readily" barred by Section 230 and a "quintessential" case for applying it. *Doe v. Reddit, Inc.*, 2021 WL 4348731, at *3 (C.D. Cal. July 12, 2021) (cleaned up).

The Ninth Circuit recently underscored the basic point, holding that Section 230 provides immunity for claims that would require the platform to "actively vet and evaluate third-party" content. *Calise*, 103 F.4th at 744 (holding negligence, unjust enrichment, and UCL claims barred); *see also Doe v.*

*MySpace, Inc.*, 528 F.3d 413, 420 (5th Cir. 2008) (parents' claims seeking to hold MySpace liable for "failure to implement measures that would have prevented" minor from communicating with abuser were "merely another way of claiming that MySpace was liable for publishing the communications" and so were barred by Section 230); *Green v. Am. Online (AOL)*, 318 F.3d 465, 471 (3d Cir. 2003) (Section 230 bars liability for "decisions relating to the monitoring, screening, and deletion of content from its network" because they are "quintessentially related to a publisher's role").

Just so here. Each of Plaintiff's claims would impermissibly treat Apple as a publisher or speaker of third-party content: they would impose a duty on Apple to monitor content by searching for apparent CSAM on its services and remove it when identified. That is a core content moderation decision and the heartland of what Section 230 immunizes. *See Calise*, 103 F.4th at 744; *Roommates*, 521 F.3d at 1170–71. Each of Plaintiff's claims seeks to impose liability that Section 230 categorically bars.

### a)  Product Liability and Practice-Based Consumer Protection Claims

The core of Plaintiff's product liability and consumer protection claims predicated on unfair practices is that Apple did not prevent third parties from uploading, storing, and sharing CSAM on iCloud. *See, e.g.*, Compl. ¶¶ 112 (North Carolina consumer protection claim based on Apple allegedly "not adopt[ing] measures to prevent CSAM"), 121 (UCL and FAL), 152 (strict product liability), 165 (negligent product liability). That is precisely what Section 230 prohibits: imposing liability for not removing third-party content. *Barnes*, 570 F.3d at 1103 ("removing content is something publishers do, and to impose liability on the basis of such conduct necessarily involves treating the liable party as a publisher of the content it failed to remove"). Said otherwise, the claims would impermissibly impose a duty on Apple to "vet and evaluate third-party" content. *Calise*, 103 F.4th at 744.

Plaintiff cannot avoid Section 230 by arguing that her claims would hold Apple liable for its own actions or its own alleged lack of safety features. *See, e.g.*, *L.W.*, 675 F. Supp. 3d at 1096; *Doe v. Snap, Inc.*, 2022 WL 2528615, at *14 (S.D. Tex. July 7, 2022), *aff'd* 2023 WL 4174061 (5th Cir. June 26, 2023) (Section 230 barred negligent design claim based on "allow[ing] messages to automatically delete"). That would still impose liability for Apple not reviewing third-party content or changing its own design for how third parties may store and share content. *See, e.g.*, *In re Facebook, Inc.*, 625 S.W.3d 80, 93–94 (Tex. 2021) (claims "may be couched as complaints about Facebook's 'design and operation' . . . , but the

company's alleged lack of safety features is only relevant" because they allegedly "would have averted wrongful communication via Facebook's platforms by third parties" (cleaned up)); *Herrick v. Grindr, LLC*, 306 F. Supp. 3d 579, 590 (S.D.N.Y. 2018), *aff'd*, 765 F. App'x 586 (2d Cir. 2019) (claim based on "fail[ure] to incorporate adequate protections against impersonating or fake accounts is just another way of asserting that Grindr is liable because it fails to police and remove impersonating content").

      **b)**    **Misrepresentation, Unjust Enrichment, and Fraud-Based Consumer Protection Claims**

The core of Plaintiff's misrepresentation, unjust enrichment, and fraud-based consumer protection claims is that Apple allegedly told consumers it would remove or prevent CSAM but did not. *See, e.g.*, Compl. ¶¶ 113 (NC consumer protection ), 122 (UCL and FAL), 126–28 (misrepresentation), 135 (unjust enrichment), 143 (negligent misrepresentation). While the claims are packaged as alleged misrepresentations, courts have repeatedly held that Section 230 bars misrepresentation claims where, as here, they seek in substance to hold a defendant liable for "inadequate policing of third-party content." *See Facebook*, 625 S.W.3d at 94; *see also L.W.*, 675 F. Supp. 3d at 1098 (misrepresentation and consumer protection claims barred because they were "predicated on the theory that Defendants violated various state laws by failing to adequately monitor and regulate end-users' harmful messages"). Any contrary result would render Section 230 a dead letter: nearly any claim barred by Section 230 could be refashioned as a misrepresentation claim, as Plaintiff has done here. *See Barnes*, 570 F.3d at 1101–02 ("[W]hat matters is not the name of the cause of action.").

      **c)**    **Trafficking Claim**

The trafficking claim likewise seeks to hold Apple liable for allegedly "not adopt[ing] measures to prevent CSAM," Compl. ¶ 106, so it is barred for the same reasons. Although Section 230 carves out a narrow exception related to 18 U.S.C. § 2421A, that exception applies only in a "*criminal prosecution* brought under State law if the conduct underlying the charge would constitute a violation of section 2421A of Title 18." 47 U.S.C. § 230(e)(5) (emphasis added); *see Reddit*, 2021 WL 4348731, at *6 (explaining that, in this exception, "Congress was very precise and made explicit distinctions between civil claims and criminal prosecution"). This criminal exception plainly does not apply to Plaintiff's civil claim.

Section 230 therefore requires dismissal of all of Plaintiff's claims.

**B.    Plaintiff Does Not State a Trafficking Claim (Claim I).**

The Complaint fails to allege the elements of a sex trafficking claim.  FOSTA Section 2421A(c) provides a civil remedy for "any person injured by reason of a violation of section 2421A(b)."  Section 2421A(b) makes it a crime to own or operate an interactive computer service (1) "with the intent to promote or facilitate the prostitution of another person" and (2) to "promote[] or facilitate[] the prostitution of 5 or more persons" or "act[] in reckless disregard of the fact that such conduct contributed to sex trafficking, in violation of 1591(a)," which in turn requires a "commercial sex act."  The Complaint contains no factual allegations of prostitution or a commercial sex act, let alone allegations about Apple's purported intent to promote prostitution.  The trafficking claim should be dismissed.

**1.    The Complaint Does Not Allege Any Act of Prostitution.**

The Complaint does not allege that Apple "promote[d] or facilitate[d] the prostitution of 5 or more persons."  18 U.S.C. § 2421A(b)(1).  "Section 2421A is a criminal statute and . . . 'promoting prostitution' has a distinct meaning in criminal law."  *Woodhull Freedom Found. v. United States*, 72 F.4th 1286, 1300 (D.C. Cir. 2023).  "[P]romoting prostitution" means "[t]he act or offense of recruiting a prostitute, finding a place of business for a prostitute, or soliciting customers for a prostitute."  *See id.* (quoting Black's Law Dictionary (10th ed. 2014)).  "Prostitution," in turn, is defined as "the act or practice of engaging in sexual activity for money or its equivalent; commercialized sex."  *Prostitution*, Black's Law Dictionary (10th ed. 2014).  "[W]hen read within its traditional criminal law context, Section 2421A(a)'s prohibition on promoting the prostitution of another person proscribes owning, managing, or operating an online platform with the intent to recruit, solicit, or find a place of business for a sex worker—that is, to aid and abet prostitution."  *Woodhull Freedom Found.*, 72 F.4th at 1300; *see also Datres v. Winfree*, 2024 WL 1756160, at *13 (W.D. Mich. Apr. 24, 2024) (same).

The Complaint does not allege any act of prostitution or commercialized sex.  Plaintiff alleges that two individuals sent "videos containing CSAM" via iMessage to Plaintiff, and "instruct[ed]" Plaintiff to send "CSAM videos of herself."  Compl. ¶¶ 78–79, 84.  These alleged acts are reprehensible but they are not a "commercial sex act" because they do not allege any exchange of payment or anything of value.  *See, e.g.*, *Datres*, 2024 WL 1756160, at *13 (dismissing Section 2421A claim because "neither sexual assault, . . . nor the production of sexually explicit images and videos constitutes 'prostitution' as that term

is generally understood"); *cf. Kolbek v. Twenty First Century Holiness Tabernacle Church, Inc.*, 2013 WL 6816174, at *16 (W.D. Ark. Dec. 24, 2013) (no commercial sex act where plaintiffs had not shown that sex acts were performed in exchange for money or payment of expenses).  Without underlying acts of prostitution involving five or more individuals, Plaintiff cannot state a claim under Section 2421A(b)(1).

### 2.    The Complaint Does Not Allege Sex Trafficking.

Plaintiff cannot satisfy Section 2421A(b)(2) for the same reason.  Plaintiff must allege that Apple acted with "reckless disregard" that use of iCloud contributed to sex trafficking, in violation of 18 U.S.C. § 1591(a).  Section 1591 makes it a crime to knowingly benefit from specific actions knowing that those actions will cause a person under 18 years of age to "engage in a commercial sex act."  *See Day v. TikTok, Inc.*, 2022 WL 595745, at *2 (N.D. Ill. Feb. 28, 2022).  Sex trafficking requires a "commercial sex act," which the statute defines as "any sex act, on account of which anything of value is given to or received by any person."  18 U.S.C. § 1591(e)(3).  In *Day*, which involved allegations of videos "depicting sexual exploitation of a 2-year-old child," the court found that the plaintiff had not alleged a commercial sex act. 2022 WL 595745, at *1–2; *see also Doe #1 v. Twitter, Inc.*, 2023 WL 3220912, at *2 (9th Cir. May 3, 2023) (unpublished) (CSAM is not sex trafficking under § 1591(a)); *Corradino v. Liquidnet Holdings Inc.*, 2021 WL 2853362, at *3 (S.D.N.Y. July 8, 2021) (trafficking claim dismissed where there was no allegation of a sex act in exchange for something of value).  Here, the Complaint does not allege any commercial sex act.  *See supra* Section IV.B.1.  As a result, Plaintiff has failed to state a claim under Section 2421A because she does not allege a predicate act of prostitution or sex trafficking.

### 3.    The Complaint Does Not Allege Intent.

Plaintiff's sex trafficking claim should be dismissed for another independent reason: failure to allege intent.  "Section 2421A(a)'s *mens rea* is clear: An intent to promote or facilitate the prostitution of another person."  *Woodhull Freedom Found.*, 72 F4th at 1299.  The Complaint does not allege that Apple intended to promote or facilitate prostitution, as required by Section 2421A(b).  "Intent" requires a deliberate aim to promote or facilitate the prostitution of another person, ensuring that individuals or entities are only liable if they specifically intend to engage in activities like aiding prostitution.  *See id.* at 1300.  While the Complaint relies on a screenshot of a 4-year-old text thread to allege Apple "knew" that there was a risk of users misusing iCloud, contrary to its terms of use, to store and distribute CSAM,

1    Compl. ¶¶ 25, 106, CSAM is not the same as prostitution, *supra* Section IV.B.1. Regardless, it is well

2    established that knowledge alone is insufficient to demonstrate intent. *See Direct Sales Co. v. United*

3    *States*, 319 U.S. 703, 711–13 (1943) (intent cannot be inferred from mere knowledge that a product will

4    be used illegally).

5         **C.    The Court Should Dismiss Plaintiff's Product Liability Claims (Claims VII, VIII).**

6         Plaintiff's product liability claims should be dismissed. As an initial matter, Plaintiff asserts claims

7    for "strict products liability" and "negligent products liability and negligence per se," but does not specify

8    which state's law applies to either claim, which alone is ground for dismissal. *In re Static Random Access*

9    *Memory (SRAM) Antitrust Litig.*, 580 F. Supp. 2d 896, 910 (N.D. Cal. 2008) (dismissing claim because

10   "until Plaintiffs indicate which States' laws support their claim, the Court cannot assess whether the claim

11   has been adequately plead[ed]"). Plaintiff's claims fail under either North Carolina or California law.[3]

12   First, iCloud is not a product within the scope of product liability law. Second, North Carolina does not

13   recognize strict liability in product liability cases. Third, Plaintiff has not identified a cognizable duty as

14   a basis for any negligence claim. Fourth, Plaintiff has not adequately alleged negligence per se. Finally,

15   Plaintiff has not alleged that Apple proximately caused her injuries. *See infra* Section IV.E.

16        **1.    iCloud Is Not a Product Within the Meaning of Product Liability Law.**

17        To state a product liability claim, Plaintiff must allege injuries caused by a "product." *See* N.C.

18   Gen. Stat. Ann. § 99B-1 (defining "Product liability action" as "any action brought for or on account of

19   personal injury, death or property damage caused by or resulting from the manufacture . . . of any

20   product"); Cal. Civ. Code § 1714.45(c) ("the term 'product liability action' means any action for injury or

21   death caused by a product"); *Jacobs v. Meta Platforms*, Inc., 2023 WL 2655586, at *2 (Cal. Super. Ct.

22   Mar. 10, 2023) ("A condition precedent to maintain a products liability action is that 'the object or

23   instrumentality claimed to be defective was in fact a product as defined or contemplated by the

24   Restatement of Torts, legislation or case law.'" (cleaned up)). The Third Restatement defines product as

25   "tangible personal property distributed commercially for use or consumption." *See* Restatement (Third)

26   of Torts: Prod. Liab., § 19 (a)-(b) (Am. L. Inst. 1998). And the Second Restatement identifies as

27

28   _____

     [3] Apple reserves the right to contest Plaintiff's choice of law at a later time.

"products" only "tangible items, such as tires, automobiles, and insecticides." *Winter v. G.P. Putnam's Sons*, 938 F.2d 1033, 1034 (9th Cir. 1991) (citing Restatement (Second) of Torts § 402A (Am. L. Inst. 1965)). iCloud does not fit the bill.

Neither state's law recognizes intangible items as "products." Courts interpreting California law hold that "[p]roducts liability law is geared to[wards] the tangible world." *Id.*; *see also Pierson v. Sharp Mem'l Hosp., Inc.*, 216 Cal. App. 3d 340, 345 (1989) (defining product as "a physical article which results from a manufacturing process and is ultimately delivered to a consumer"). And although North Carolina courts have not specifically addressed the definition of product, they look to the Second Restatement in product liability cases, which rejects sweeping intangible items into the product liability regime. *See Warzynski v. Empire Comfort Sys., Inc.*, 401 S.E.2d 801, 804 (N.C. Ct. App. 1991) (citing Section 400 of the Second Restatement on product liability issue and noting that "[t]he [North Carolina] Supreme Court cited this section of the Restatement with approval"); *Coffer v. Standard Brands, Inc.*, 226 S.E. 2d 534, 539 (N.C. Ct. App. 1976) (citing Section 402A of the Second Restatement regarding tort claim). More generally, courts nationwide have "opposed extending products liability law to . . . intangible thoughts, ideas, and messages contained within . . . website materials" because the public policy goals underlying the doctrine of product liability are rooted in tangibility. 2 Owen & Davis on Prods. Liab., § 17:28 (Mary J. Davis, ed., 4th ed., May 2023 Update).

Further, "services, even when provided commercially, are not products." *See Social Media Cases*, 2023 WL 6847378, at *15 (Cal. Super. Ct. Oct. 13, 2023) (declining to apply product liability law to social media platforms, which are "not tangible products"); Rest. 3d Torts, Prod. Liab., § 19 cmt. F ("Courts are unanimous in refusing to categorize commercially-provided services as products."). Thus, courts reject product liability claims premised on services, including those that concern online platforms, information, or other intangibles. *See, e.g.*, *Jacobs*, 2023 WL 2655586, at *4 (dismissing product liability claim; "as a social media platform that connects its users, Facebook is more akin to a service than a product"); *Ziencik v. Snap, Inc.*, 2023 WL 2638314, at *1, *4 (C.D. Cal. 2023) (app that allowed users to communicate with one another "is more like a service than a product, and services are not subject to the laws of strict products liability"); *Jackson v. Airbnb, Inc.*, 639 F. Supp. 3d 994, 1011 (C.D. Cal. 2022) (online "platform that connects users . . . is more akin to a service than to a product"); *Langley v. Guiding Hands Sch., Inc.*, 2021

WL 1212713, at *14 (E.D. Cal. Mar. 31, 2021) (dismissing "negligent product liability" claim as allegations concerned a "service" rather than "a 'product'"); *Flores v. Uber Techs.*, 2022 Cal. Super. LEXIS 9648, at *8 (Cal. Super. Ct. Mar. 22, 2022) ("[A] plaintiff must show the transaction in which she obtained the product was one in which the transaction's primary objective was to acquire ownership or use of a product, and not one where the primary objective was to obtain a service.").

Here, Plaintiff expressly bases her product liability claims on "Apple's cloud storage service, iCloud," which Plaintiff describes as part of Apple's "subscription-based services business."  Compl. ¶ 151 (strict product liability); *see id.* ¶ 161 (negligent product liability); *see also id.* ¶¶ 4, 7, 22, 57, 89, 94, 135, 152, 155 (describing iCloud as a "service").  Indeed, iCloud provides a service for users to safely and securely store their information. *Id.* ¶¶ 4–7, 59–65.  Plaintiff also brings a claim under Section 2421A, which applies only to operators of an "interactive computer service." *See id.* ¶¶ 102, 105.  And Plaintiff makes no allegation that iCloud is tangible in any way, unlike the tires, automobiles, and insecticides referenced in the Second Restatement.  Instead, she alleges that it provides a service that includes storage and sharing features. *Id.* ¶¶ 4–7, 59–65.  Because iCloud is a service, not a product, Plaintiff's product liability claims fail.

In addition to excluding services, product liability law does not reach information or content, because that would raise "significant constitutional problems under the First Amendment that ought to be avoided." *James v. Meow Media, Inc.*, 300 F.3d 683, 695 (6th Cir. 2002).  Here, the product liability claims are based on the alleged distribution of illicit *content*—specifically, videos—via iCloud.  *See generally* Compl. ¶¶ 147–68.  Courts have held that images "are not sufficiently 'tangible' to constitute products." *James*, 300 F.3d at 701 (citing *Winter*, 938 F.2d at 1036).  Because Plaintiff's product liability claims are based on exposure to intangible content, they fail to state a claim.  *See Est. of B.H. v. Netflix, Inc.*, 2022 WL 551701, at *3 (N.D. Cal. Jan. 12, 2022) (dismissing product liability claims because "[t]here is no strict liability for books, movies, or other forms of media" rooted in intangible content), *aff'd sub nom. Est. of Herndon v. Netflix, Inc.*, 2024 WL 808797 (9th Cir. Feb. 27, 2024).

**2.    North Carolina Law Does Not Recognize Strict Product Liability (Claim VII).**

Plaintiff's claim for strict product liability cannot be maintained under North Carolina law.  *See*

Compl. ¶¶ 147–58.  By North Carolina statute, "[t]here shall be no strict liability in tort in product liability actions."  N.C. Gen. Stat. Ann. § 99B-1.1; *see also Stoddard v. Wyeth, Inc.*, 630 F. Supp. 2d 631, 632 (E.D.N.C. 2009) ("North Carolina does not recognize strict liability in product liability cases.").  Thus, Claim VII must be dismissed to the extent it is asserted under North Carolina law.

### 3.    The Negligent Product Liability Claim Fails for Lack of a Cognizable Duty (Claim VIII).

Plaintiff's "negligent product liability" claim should also be dismissed because the Complaint does not allege any recognized legal duty, a required element of any negligence claim.  *See Durden v. United States*, 736 F.3d 296, 301 (4th Cir. 2013) (holding that in North Carolina "a defendant cannot be held liable for negligence absent a duty owed to the plaintiff and breach of that duty"); *Apex Directional Drilling, LLC v. SHN Consulting Eng'rs & Geologists, Inc.*, 119 F. Supp. 3d 1117, 1122 (N.D. Cal. 2015) ("[t]he threshold element of a cause of action for negligence is the existence of a duty").  In *Dyroff*, for example, the Ninth Circuit refused to find that a website owed its users a duty of care, observing that "[n]o website could function if a duty of care was created when a website facilitates communication, in a content-neutral fashion, of its users' content."  934 F.3d at 1101; *Doe v. MySpace, Inc.*, 474 F. Supp. 2d 843, 851 (W.D. Tex. 2007) (finding defendant website did not owe a duty of care to adopt safety measures for its website), *aff'd*, 528 F.3d 413 (5th Cir. 2008).

Apple owes no legal duty to prevent harm to users caused by the unlawful acts of third parties. *See Durden*, 736 F.3d at 304 (finding "there is neither a duty to control the actions of a third party, nor to protect another from a third party"); *Gavra v. Google Inc.*, 2013 WL 3788241, at *3 (N.D. Cal. July 17, 2013) ("Google has assumed no affirmative duty to protect Plaintiffs from extortion.").  In fact, "the defendant owes no legal duty to the plaintiff" if "the defendant has neither performed an act that increases the risk of injury to the plaintiff nor sits in a relation to the parties that creates an affirmative duty to protect the plaintiff from harm."  *Brown v. USA Taekwondo*, 11 Cal. 5th 204, 216 (2021).  And the Ninth Circuit has explained that a defendant's inaction or "nonfeasance" does not create a duty of care where none existed prior.  *See Dyroff*, 934 F.3d at 1100.  Nor does the tort law principle of a "special relationship" create a general duty of care between Apple and iCloud users.  *See id.* at 1101 ("[N]o special relationship [exists] between Facebook and its users."); *see also, e.g.*, *James*, 300 F.3d at 694 (websites, video game

manufacturers, and movie producers had no "special relationship" with students killed by classmate). Plaintiff's allegation that Apple owed a duty of care to prevent CSAM distribution by third parties via iCloud, *see generally*, Compl. ¶¶ 163–65, is insufficient as a matter of law. Without a cognizable duty that Apple has allegedly breached, Plaintiff's "negligent products liability" claim should be dismissed.

### 4. Plaintiff Does Not Sufficiently Allege Negligence Per Se (Claim VIII).

Under either California or North Carolina law, Plaintiff's "negligent product liability and negligence per se" claim is deficient to the extent it is based on negligence per se. North Carolina law permits negligence per se claims only to the extent statutes "impos[e] upon the defendant a *specific duty* for the *protection of others.*" *Stein v. Asheville City Bd. of Educ.*, 626 S.E.2d 263, 266 (N.C. 2006) (cleaned up, emphasis added). And in California, "[n]egligence per se is an evidentiary doctrine, rather than an independent cause of action." *Jones v. Awad*, 39 Cal. App. 5th 1200, 1210 (2019). This evidentiary doctrine is "a presumption of negligence [that] arises from the violation of a statute which was enacted to protect a class of persons of which the plaintiff is a member against the type of harm which the plaintiff suffered as a result of the violation of the statute." *Hoff v. Vacaville Unified Sch. Dist.*, 968 P.2d 522, 530 (Cal. 1998). The allegations fail to plausibly invoke this doctrine under either state's framework.

Plaintiff alleges that "Apple owed a duty of care (negligence per se) to Jane Doe . . . to not violate laws prohibiting the distribution of CSAM." Compl. ¶ 164. Plaintiff does not identify what laws she is referencing, so she has not plausibly alleged that Apple violated a law that imposed a duty *on it* that was enacted to protect a class of persons including Plaintiff. *See Stein*, 626 S.E.2d at 266; *Hoff*, 968 P.2d at 530. To the extent she intends to reference Section 2421A, that law does not "prohibit[] the distribution of CSAM," nor has Plaintiff alleged a violation of it, as discussed above. *See supra* Section IV.B.

### D. The Consumer Protection and Misrepresentation Claims Fail (Claims II, III, IV, VI).

Plaintiff's consumer protection and misrepresentation claims have overlapping elements and share common incurable defects. The misrepresentation-based claims fail to allege any actionable misrepresentation, let alone one pleaded with the particularly that Rule 9(b) requires, and there is no such claim as "negligent misrepresentation per se" under either state's law. The unfair practices claims do not adequately allege that the practices at issue are not reasonably avoidable and do not grapple with the Complaint's own allegations about the substantial benefits of the challenged technologies. The claims

also suffer from other flaws, such as lack of equitable jurisdiction or lack of statutory standing.  And Claim IV invokes an irrelevant North Carolina statute that applies only in the insurance context.

### 1.    Plaintiff Does Not Allege an Actionable Misrepresentation (Claims II, III, VI).

The FAL claim, the NCUDTPA and UCL claims to the extent they are predicated on alleged deceptive statements, and the negligent misrepresentation claim all fail to allege any misrepresentation at all—and certainly not one that can form the basis of a viable claim.  *See* N.C. Gen. Stat. Ann. § 75–1.1 (NCUDTPA); Cal. Bus. & Prof. Code § 17200 (UCL); *id.* § 17500 (FAL); *Fitzgerald Fruit Farms LLC v. Aseptia, Inc.*, 527 F. Supp. 3d 790, 800 (E.D.N.C. 2019) (NC misrepresentation); *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Cambridge Integrated Servs. Grp., Inc.*, 171 Cal. App. 4th 35, 50 (2009) (CA misrepresentation).

A reasonable consumer would not be misled by the single alleged misrepresentation.  Plaintiff alleges that Apple purportedly "misl[ed] consumers to believe that they are using consumers' private data to prevent CSAM production."  Compl. ¶ 122.  Specifically, Plaintiff alleges Apple's Privacy Policy promised that "Apple would use Jane Doe's personal data 'protect individuals' and conduct 'prescreening or scanning uploaded content for potentially illegal content, including child sexual exploitation material.'"  *Id.* ¶ 127.  But the Privacy Policy section the Complaint invokes is not a promise: it is a ***disclosure*** of the ways that Apple "***may***" use user data.  *See* RJN Ex. 3 at 3–4 (cited at, *e.g.*, Compl. ¶ 126 & n.40).  Within this list of possible uses—like processing transactions and complying with the law—Apple says it "may" use data for "Security and Fraud Prevention . . . including to protect individuals, employees, and Apple for the benefit of all our users, and prescreening or scanning uploaded content for potentially illegal content, including child sexual exploitation material."  *Id.*

No reasonable person would understand this disclosure of the ways Apple *may* use data as a commitment to scan all data on Apple's services and prevent third-party bad actors from spreading CSAM.  *Contra, e.g.*, Compl. ¶ 128.  That is so as a matter of the general use of language.  *See, e.g.*, *May*, Merriam-Webster Dictionary ("used to indicate possibility or probability"); *United States v. Rodgers*, 461 U.S. 677, 706 n.34 (1983) (collecting examples of the general rule that "may" "implies . . . discretion").  Further, Apple saying it may scan content does not state that it would, for instance, scan *all* content, scan content *sent to Plaintiff*, or take specific *action* on specific content.  Holding otherwise would instantly transform

every permissive disclosure of a possibility into a commitment to implement that possibility.  That is not the law.  *See, e.g.*, *Moore v. Trader Joe's Co.*, 4 F.4th 874, 882–83 (9th Cir. 2021) (claims based on "unreasonable or fanciful interpretations" should be dismissed); *Suntrust Bank v. Bryant/Sutphin Props., LLC*, 732 S.E.2d 594, 598 (N.C. App. 2012) ("An act or practice is deceptive if it has the capacity or tendency to deceive." (cleaned up)).

The Complaint's own allegations of the publicity surrounding Apple's announcements about scanning iCloud underscore that no reasonable consumer would have Plaintiff's distorted interpretation of the statement.  *See Dinan v. Sandisk LLC*, 2019 WL 2327923, at *6 (N.D. Cal. May 31, 2019) ("the Ninth Circuit has made clear that context and consumers' 'common sense' matter to the inquiry as well"). The Complaint alleges that Apple announced it was considering pursuing scanning of iCloud for CSAM and later announced it would not move forward with that proposal (instead adopting other features, such as Communication Safety).  Compl. ¶¶ 55–57.  Accordingly, no reasonable consumer who read the challenged Apple disclosure would, in context, understand it as a commitment to do precisely what Plaintiff faults Apple for announcing it was *not* doing.  *Cf. Dinan*, 2019 WL 2327923, at *4–6 (collecting examples of curative representations that rendered challenged statements not misleading).

Plaintiff also fails to plead actual reliance or reasonable or justifiable reliance with particularity, as required by Rule 9(b).  *See Kearns*, 567 F.3d at 1126; *Bumpers v. Cmty. Bank of N. Virginia*, 747 S.E.2d 220, 226 (N.C. 2013) (NCUDTPA); *Nacarino v. Chobani, LLC*, 668 F. Supp. 3d 881, 892 (N.D. Cal. 2022) (UCL and FAL); *Fitzgerald*, 527 F. Supp. 3d at 799 (NC misrepresentation); *Nat'l Union Fire*, 171 Cal. App. 4th at 50 (CA misrepresentation).  Rule 9(b) requires plaintiffs to specify when they were exposed to the purported misleading statements and whether they relied on them.  *Kearns*, 567 F.3d at 1126.  The Complaint does not do so.  There is a conclusory allegation that Plaintiff and "her guardians" "relied" on Apple's statement, but there are no allegations about when and where they encountered the statement—or even that they actually read it.  That would fail even Rule 8 and certainly fails Rule 9(b). *See, e.g.*, *Johnson v. Glock, Inc.*, 2021 WL 428635, at *4 (N.D. Cal. Feb. 8, 2021) (dismissing claim where there was "no pleading that [plaintiff] ever saw, let alone relied on, the website [containing the alleged misrepresentations] prior to purchasing his gun" (cleaned up)); *Cross v. Ciox Health, LLC*, 438 F. Supp. 3d 572, 585 (E.D.N.C. 2020) (dismissing NCUDTPA claim for failure "to allege the time, place, and

1    contents of the false representations with particularity" (cleaned up)).  And any reliance is not reasonable

2    or justifiable: as explained, no reasonable person would understand the statement to be the sort of

3    commitment that Plaintiff now tries to paint it as, and so would not plausibly rely on it for that purpose.

4            Finally, Apple is aware of no authority—under North Carolina law, California law, or the

5    Restatement of Torts—supporting the existence of a "negligent misrepresentation per se" claim.  *See*

6    Claim VI.  That alone requires dismissal of that aspect of Claim VI.  To the extent Plaintiff intends to

7    invoke *negligence* per se, such a claim fails for the same reasons her product liability negligence per se

8    claim does, including that she does not identify what statute purportedly imposes the duty giving rise to

9    negligence per se.  *See supra* Section IV.C.4; Compl. ¶ 142.

10                   **2.    Plaintiff Does Not Allege an Actionable Unfair Practice (Claims II, III).**

11           To the extent the NCUDTPA and UCL claims are predicated on alleged unfair acts, they are

12   inadequately pleaded in multiple ways.  The Complaint alleges that the challenged technology comes with

13   meaningful benefits but never adequately alleges why they are outweighed; there is no cognizable injury

14   flowing from Apple's conduct (as opposed to that of the unidentified bad actors); the Complaint itself

15   makes clear that iCloud is "reasonably avoidable" by consumers; and the allegations are not tethered to a

16   violation of California public policy.  Accordingly, these claims fail under any of the tests courts use.

17          Under the NCUDTPA, "an act or practice is unfair if it is immoral, unethical, oppressive,

18   unscrupulous, or substantially injurious to consumers."  *Suntrust Bank*, 732 S.E.2d at 598 (cleaned up).

19   The NCUDTPA is "patterned after section 5 of the Federal Trade Commission Act [(FTCA)], 15 U.S.C.

20   § 45(a)(1), and [North Carolina courts] look to federal case law for guidance in interpreting the statute."

21   *Henderson v. U.S. Fid. & Guar. Co.*, 488 S.E.2d 234, 239 (N.C. 1997) (citations omitted).

22          California courts are split on how to evaluate a UCL claim under the unfair prong.  *See Hodsdon

23   v. Mars, Inc.*, 891 F.3d 857, 866 (9th Cir. 2018).  Some apply a balancing test—which the California

24   Supreme Court has called unduly "amorphous" and "vague," *Cel-Tech Commc'ns, Inc. v. L. A. Cellular

25   Tel. Co.*, 20 Cal. 4th 163, 185 (1999)—under which courts examine the "impact on [the] alleged victim,

26   balanced against the reasons, justifications and motives of the alleged wrongdoer" or "the utility of the

27   defendant's conduct against the gravity of the harm to the alleged victim," *Davis v. HSBC Bank Nevada,

28   N.A.*, 691 F.3d 1152, 1169 (9th Cir. 2012) (cleaned up).  Other courts have employed the three-prong test

1    from Section 5 of the FTCA. *See Hodsdon*, 891 F.3d at 866. And others apply a "tethering" test under

2    which a violation must be "tethered to some legislatively declared policy," *Davis*, 691 F.3d at 1170

3    (cleaned up), where there is a "close nexus between the challenged act and the legislative policy,"

4    *Hodsdon*, 891 F.3d at 866.

5              **a)      The Complaint Fails to Address the Benefits of the Technology.**

6    Courts dismiss unfair practices claims when material "incorporated into the" Complaint "contains

7    a number of reasons for the [challenged technology] that are allegedly beneficial to consumers" but fails

8    to "refute these alleged benefits, or to show that they are outweighed by the injury [Plaintiff] suffered."

9    *Parziale v. HP, Inc.*, 445 F. Supp. 3d 435, 446–47 (N.D. Cal. 2020) (dismissing claims under FTCA

10   Section 5 analysis). Here, the Complaint all but concedes that providing users encrypted iCloud storage

11   that no one else, including Apple, can access is beneficial to user privacy—and so to safety. *See, e.g.*,

12   Compl. at 3 ("this lawsuit does undermine the importance of privacy of users generally, nor does it oppose

13   privacy tools like end-to-end encryption"). As it notes, "end-to-end encryption enhances user privacy."

14   Compl. ¶ 18. The Complaint incorporates statements underscoring the wide-ranging privacy benefits of

15   end-to-end encryption, including preventing companies from monetizing users' data and securing users'

16   data in the event of a potential data breach. *See* RJN Ex. 1 at 1 (cited by Compl. ¶¶ 59–64); Ex. 7 at 2–3

17   (cited by Compl. ¶ 56). The Complaint also incorporates statements identifying privacy and security

18   risks to widespread scanning, including creating new threat vectors for data thieves to find and exploit and

19   opening the door to bulk surveillance. *Id.* (scanning systems are "not foolproof and there is documented

20   evidence from other platforms that innocent parties have been swept into dystopian dragnets that have

21   made them victims"). Because the technology provides privacy benefits, it is also a benefit for safety—

22   including for children. The encrypted iCloud environment means that even if there were a data breach,

23   the breacher could not access children's content—including their sensitive content, like messages with

24   friends and family about personal topics—as they could with unencrypted content. *Cf. id.*[4]

25   The Complaint does not grapple with any of this, let alone demonstrate why these meaningful

---

[4] The same is true of other features that Plaintiff apparently challenges. For instance, the ability to share
iCloud links is a beneficial technology—and is no different than sharing content of any sort, which users
do billions of times per day—not an unfair trade practice.

1  benefits should be prohibited as unfair practices.  The Complaint contends that "our society frequently

2  harmonizes privacy and safety," Compl. at 2, and that scanning content for CSAM is "compatible with

3  end-to-end encryption," *id.* ¶ 36, but never explains how to achieve this "harmony" for iCloud differently

4  than Apple already has or how encrypted content could possibly be scanned for CSAM.  Indeed, the

5  Complaint alleges that Google is able to scan for CSAM only *because* it "does not end-to-end encrypt

6  Gmail or Google Drive."  *Id.* ¶ 42.  Plaintiff's own allegations require dismissal.  *See, e.g.*, *Parziale*, 445

7  F. Supp. 3d at 446–47; *Kindred Studio Illustration & Design, LLC v. Elec. Commc'n Tech., LLC*, 2018

8  WL 6985317, at *7 (C.D. Cal. Dec. 3, 2018) (dismissing conclusory allegations under Section 5 test).

9          **b)    The Claims Do Not Satisfy the FTCA Section 5 Test.**

10         Plaintiff's claims fail at each step of the Section 5 test, which governs the NCUDTPA claim and

11  is one test used for the UCL.  Under Section 5 of the FTCA, "an unfair practice or act is one that causes

12  or is likely to cause [1] substantial injury to consumers [2] which is not reasonably avoidable by consumers

13  themselves and [3] not outweighed by countervailing benefits to consumers or to competition."  *FTC. v.*

14  *Neovi, Inc.*, 604 F.3d 1150, 1155 (9th Cir. 2010) (quoting 15 U.S.C. § 45(n)).

15         The Complaint fails to plausibly allege that Apple's use of privacy-protective technology is

16  "substantially injurious" to consumers.  The proximate cause of Plaintiff's injuries were the bad actors

17  that misused widely available technologies—not the design of iCloud.  *See infra* Section IV.E.  And the

18  Complaint incorporates information showing that Apple's technology is beneficial to consumers, not

19  injurious, and fails to address those benefits or show that they are not outweighed by the purported injuries.

20  *See supra* Section IV.D.2.a; *Kindred*, 2018 WL 6985317, at *7; *Parziale*, 445 F. Supp. 3d at 446–47.

21         The Complaint also fails to allege that consumers cannot "reasonably avoid" using iCloud.  Indeed,

22  the Complaint itself alleges there are other "***widely-used*** online storage providers."  Compl. ¶ 46 (emphasis

23  added).  And it references one such alternative, Google Drive.  *Id.* ¶ 42.  A consumer can choose not to

24  use iCloud and the Complaint does not say otherwise.  *See, e.g.*, *Davis*, 691 F.3d at 1168–69 (alleged harm

25  reasonably avoidable because consumer could choose not to open credit card).

26         **c)    The UCL Claim Fails Under the Tethering Test (Claim III).**

27         Under the tethering test, the Complaint fails to identify any legislative policy to which the claim

28  is tethered, let alone one with a "close nexus" to the challenged act.  *Hodsdon*, 891 F.3d at 866.  That

failure is fatal to Plaintiff's claim.  *See, e.g.*, *Republican Nat'l Comm. v. Google LLC*, 2024 WL 3595538, at *9 (E.D. Cal. July 31, 2024) (dismissing UCL unfairness claim for failure to identify public policy).

### 3.    The UCL and FAL Claims Fail for Lack of Equitable Jurisdiction (Claim III).

In addition to the reasons above, the equitable UCL and FAL claims fail under *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020), because Plaintiff has not alleged that she lacks a remedy at law.  Those claims only permit equitable remedies, *see id.* at 844 (UCL); *Zaback v. Kellogg Sales Co.*, 2020 WL 6381987, at *4 (S.D. Cal. Oct. 29, 2020) (FAL), and, consistent with general equitable principles, "a plaintiff must, at a minimum, *plead* that she lacks adequate remedies at law if she seeks equitable relief," *Guthrie v. Transamerica Life Ins. Co.*, 561 F. Supp. 3d 869, 875 (N.D. Cal. 2021) (collecting cases).  Plaintiff has not done so.  To the contrary, she brings a range of legal claims for damages.  *See* Compl. Claims I, IV, VI, VII, VIII.

### 4.    Plaintiff Lacks Statutory Standing Under the UCL (Claim III).

The UCL claim fails for yet another independent reason: Plaintiff lacks statutory standing under the UCL because she has not alleged that she "lost money or property as a result of the unfair competition." *In re Adobe Sys., Inc. Priv. Litig.*, 66 F. Supp. 3d 1197, 1223 (N.D. Cal. 2014).  Although she alleges that Apple *offers* subscriptions to iCloud, she never alleges that she purchased one or that one was purchased on her behalf.  Nor does she allege that she engaged in any other transaction as a result of Apple's alleged unfair practice or statement, much less that she lost money or property.

### 5.    The North Carolina Insurance Practices Claim Is Inapplicable (Claim IV).

North Carolina General Statutes §§ 58-63 does not apply here.  That chapter "regulate[s] trade practices in the business of insurance," N.C. Gen. Stat. Ann. § 58-63-1, and only prohibits "unfair method[s] of competition or an unfair or deceptive act or practice *in the business of insurance*," *id.* § 58-63-10 (emphasis added).  This case is not about insurance and the Complaint does not allege a theory for how this insurance statute could possibly apply here.  Further, "violations of these insurance statutes are actional only by the Commissioner of Insurance." *Allianz Glob. Risks US Ins. Co. v. Travelers Prop. Cas. Co. of Am.*, 2022 WL 2835426, at *2 (W.D.N.C. July 20, 2022).

**E.    Plaintiff Cannot Establish that Apple Proximately Caused Her Injuries (Claims II, III, VI, VII, VIII).**

Plaintiff's NCUDTPA, negligent misrepresentation, and product liability claims all fail as a matter of law because she does not adequately allege proximate causation, a necessary element of each cause of action.  *See Murray v. Nationwide Mut. Ins. Co.*, 472 S.E.2d 358, 362–63 (N.C. App. 1996) (NCUDTPA); *Brinkman v. Barrett Kays & Assocs., P.A.*, 575 S.E.2d 40, 42–43 (N.C. App. 2003) (NC negligent misrepresentation); *Osborn v. Irwin Mem'l Blood Bank*, 5 Cal. App. 4th 234, 251 (1992) (CA negligent misrepresentation); *Red Hill Hosiery Mill, Inc. v. MagneTek, Inc.*, 530 S.E.2d 321, 326 (N.C. App. 2000) (NC product liability); *Camacho v. JLG Indus. Inc.*, 93 Cal. App. 5th 809, 817 (2023) (CA product liability).  The UCL and FAL claims require that the challenged practice be the "immediate cause" of the alleged injury.  *Beyer v. Symantec Corp.*, 333 F. Supp. 3d 966, 980 (N.D. Cal. 2018).  As courts routinely hold, the criminal acts of third parties are a new and independent cause that breaks the chain of causation.

The heinous criminal acts alleged in the Complaint—perpetrated by unknown third parties—break any plausible chain of causation.  "Proximate cause is a cause which in natural and continuous sequence, ***unbroken by any new and independent cause***, produced the plaintiff's injuries."  *Hairston v. Alexander Tank & Equip. Co.*, 311 S.E.2d 559, 565 (N.C. 1984) (emphasis added); *see also, e.g.*, *Novak v. Cont'l Tire N. Am.*, 22 Cal. App. 5th 189, 197 (2018) (discussing similar California proximate cause rule).  A defendant is not the proximate cause of a plaintiff's harm when that harm is directly caused by criminal acts of third parties.  *See, e.g.*, *Blackmon v. Tri-Arc Food Sys., Inc.*, 782 S.E.2d 741, 745 (N.C. App. 2016) ("The criminal acts of a third party are generally considered unforeseeable and independent, intervening causes absolving the defendant of liability." (cleaned up)); *see generally Modisette v. Apple Inc*., 30 Cal. App. 5th 136, 154 (2018) (although Apple's "manufacture of the iPhone 6 Plus" was a "necessary antecedent" of the plaintiffs' injuries, "those injuries were not a result of Apple's conduct" because a third party "caused [plaintiffs'] injuries when he crashed into their car" (cleaned up)).  Courts apply this general principle to instances where victims connect with bad actors via internet services.  *See, e.g.*, *Fields II*, 881 F.3d at 750 (website was not proximate cause of harm caused by ISIS merely by providing "accounts and messaging services" to it); *see also, e.g.*, *Crosby v. Twitter, Inc.*, 921 F.3d 617, 625 (6th Cir. 2019) (same).  That accords with the Supreme Court's recent holding that online platforms do not aid and abet third-party

misconduct merely by providing generally accessible platforms and allegedly failing to prevent the misconduct. *Twitter, Inc. v. Taamneh*, 598 U.S. 471, 499–501 (2023).

Here, Plaintiff connected with the bad actors on Snapchat, Compl. ¶ 77, and they unilaterally and independently sent her CSAM and requested CSAM from her via iMessage and/or iCloud, *id.* ¶¶ 78–85. Plaintiff alleges that she was harmed "[a]s a result of this interaction" with the bad actors. *Id.* ¶ 86. These are paradigmatic independent criminal acts that, as a matter of law, break the causal chain. Plaintiff's injuries were proximately caused by the unnamed bad actors, not the neutral and generally accessible platform they happened to use to share illicit material. *Cf., e.g.*, *Fields II*, 881 F.3d at 750. The Complaint appears to allege that Apple could or should have foreseen this misconduct. But it would distort proximate causation to hold that online platforms—rather than the bad actors themselves—are the proximate cause of injuries solely based on an alleged failure to police the content of hundreds of millions of users.

### F. Plaintiff Does Not Allege Apple Was Unjustly Enriched at Her Expense (Claim V).

Plaintiff's unjust enrichment claim (also not brought under any particular state's law) and related request for restitution must be dismissed because there is no allegation that Apple gained anything at Plaintiff's expense and unjustly retained it in any way related to these claims. That is the basic requirement of an unjust enrichment claim or a request for restitution. *See, e.g.*, *Russell v. Walmart, Inc.*, 680 F. Supp. 3d 1130, 1132 (N.D. Cal. 2023) (California law); *Primerica Life Ins. Co. v. James Massengill & Sons Constr. Co.*, 712 S.E.2d 670, 676–77 (N.C. App. 2011) (North Carolina law). Although Plaintiff alleges that Apple provides iCloud subscriptions, she never alleges that she purchased one, and she cannot rely on the experiences of absent putative class members to state a claim. *See generally TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021). Nor does she allege that other purchases from Apple (like the iPad she references) had anything to do with the basis of her claims, were induced by Apple's allegedly wrongful business practices, or were made in reliance on Apple's allegedly misleading statements.

Moreover, the Court lacks equitable jurisdiction to hear the unjust enrichment claim because Plaintiff has not alleged she lacks an adequate legal remedy, as discussed above. *See Sharma v. Volkswagen AG*, 524 F. Supp. 3d 891, 909 (N.D. Cal. 2021); *supra* Section IV.D.3.

### V. CONCLUSION

For the reasons stated, Apple respectfully requests that the Complaint be dismissed with prejudice.

DATED: October 25, 2024                    Respectfully submitted,


                                           By:    */s/ Isaac D. Chaput*

                                           Ashley M. Simonsen (Bar No. 275203)
                                           COVINGTON & BURLING LLP
                                           1999 Avenue of the Stars
                                           Los Angeles, California 90067
                                           Telephone: (424) 332-4800
                                           Facsimile: (424) 332-4749
                                           Email: asimonsen@cov.com

                                           Isaac D. Chaput (Bar No. 326923)
                                           Amy S. Heath (Bar No. 312516)
                                           COVINGTON & BURLING LLP
                                           Salesforce Tower
                                           415 Mission Street, Suite 5400
                                           San Francisco, California 94105
                                           Telephone: (415) 591-6000
                                           Facsimile: (415) 591-6091
                                           Email: ichaput@cov.com
                                           Email: aheath@cov.com

                                           David N. Sneed (*pro hac vice*)
                                           COVINGTON & BURLING LLP
                                           One CityCenter, 850 Tenth Street, NW
                                           Washington, DC 20001-4956
                                           Telephone: (202) 662 5027
                                           Facsimile: (202) 778-5027
                                           Email: dsneed@cov.com

                                           *Attorneys for Defendant Apple Inc.*