UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANE DOE, et al.,<br><br>          Plaintiffs,<br><br>    v.<br><br>APPLE INC.,<br><br>          Defendant. | Case No. 24-cv-05107-NW<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS AND GRANTING DEFENDANT'S MOTION TO STAY**<br><br>Re: ECF No. 38 |

On January 15, 2025, Apple Inc. filed a motion to dismiss. ECF No. 38. On March 26, 2025, Apple moved to stay discovery pending resolution of that motion. ECF No. 50. Jane Doe, by and through her guardian, and on behalf of similarly situated class members ("Plaintiffs") timely opposed both motions. On April 28, the Court found these motions appropriate for disposition without oral argument, Civil Local Rule 7-1(b), vacated the motions hearing, and took the motions under submission. For the reasons stated below, the Court GRANTS in part and DENIES in part the motion to dismiss, and GRANTS the motion to stay.

**I.     BACKGROUND**

Plaintiffs' claims against Apple relate to the storage and possession of Child Sexual Abuse Material ("CSAM"). Plaintiffs bring this case on behalf of "Jane Doe, a nine-year-old child who is a victim of child sexual abuse, which was facilitated on iMessage and stored on iCloud," and on behalf of all others similarly situated pursuant to Fed. R. Civ. P. 23. First Amended Complaint ("FAC"), ECF No. 30 ¶¶ 1, 105. Plaintiffs define the class as: "Each and every individual in the United States who has been a victim of child sexual abuse resulting from the transmission of CSAM on Apple's iCloud service in the three years preceding the filing of this lawsuit." *Id.* The FAC alleges seven causes of action under federal, California, and North Carolina law.

### A. Apple iCloud

Launched on October 12, 2011, Apple iCloud "securely stores your photos, files, notes, passwords, and other data in the cloud and keeps it up to date across all your devices, automatically." Apple, *Introduction to iCloud*, https://support.apple.com/guide/icloud/introduction-to-icloud-mm74e822f6de/icloud ("iCloud User Guide") (referenced at FAC ¶ 5, n.5). As alleged, "iCloud is akin to a digital warehouse, whereby users can choose to store" and share personal files, thereby freeing up storage space on their devices. FAC ¶ 6. While users have immediate access to their files through the internet, the data itself 'lives' on a server within an offsite physical data center. *Id.* ¶¶ 7-8. iCloud is "built into each Apple device," and any consumer who owns a single piece of Apple hardware is entitled to 5 GB of free iCloud data storage. *See* iCloud User Guide.

Like many similar products on the market, iCloud data is secured using encryption. *Id.* ¶¶ 20, 66. Since 2022, users have had the choice between two levels of data protection, standard or advanced. *Id.* ¶ 66. With Standard Data Protection, iCloud data is encrypted but the encryption keys are secured in Apple's data centers, allowing Apple to decrypt users' data. *Id.* ¶¶ 67, 71. Advanced Data Protection provides end-to-end encryption, meaning the encryption keys are stored only on users' devices, effectively locking Apple out of the stored data. *Id.* ¶ 68.

Plaintiffs allege that Apple is willfully blind to CSAM kept on its servers. *Id.* ¶ 117 ("By Apple's own knowledge and admission, iCloud is the greatest platform for storing and distributing child porn."). In support of this assertion, Plaintiffs quote a text message sent in 2020 by Apple's then anti-fraud chief Eric Friedman. *Id.*, Ex. 1. In the 2020 text message, Friedman states that other tech companies focus on "trust and safety" but "suck" when it comes to privacy, and the priorities at Apple "are the inverse [w]hich is why [Apple] [is] the greatest platform for distributing child porn, etc." *Id.* When asked in the text thread if there is "a lot of [CSAM] in our ecosystem," Friedman responds, "Yes," and admits that Apple has "chosen to not know [about CSAM] in enough places where we really cannot say." *Id.*

### B. Jane Doe

Plaintiff Jane Doe is a minor living in Charlotte, North Carolina. FAC ¶¶ 78, 99. In 2023, when Doe was nine, she received an iPad for Christmas. *Id.* ¶ 81. Soon thereafter, two unknown individuals contacted Doe through the Snapchat application, "requested to be friends with Plaintiff," and "asked for Plaintiff's iCloud ID." *Id.* ¶¶ 84–85. Over the course of a few days, these unknown individuals used Doe's iCloud ID to send her "approximately five videos containing CSAM via iMessage," Apple's messaging platform. *Id.* ¶ 86. Plaintiffs allege that "Doe's perpetrators specifically used iCloud links for storing and distributing CSAM." *Id.* ¶ 119. Plaintiffs allege that the bad actors used storage space on Apple servers to store CSAM. *Id.* ¶ 200. Plaintiffs further allege that the perpetrators used iCloud's sharing features to send untraceable links of CSAM directly to Doe, and, when they solicited her, Doe used iCloud's sharing features to return CSAM of herself. *Id.* ¶¶ 87, 90-94.

### C. Class Allegations

As defined, the putative class is comprised of "[e]ach and every individual in the United States who has been a victim of child sexual abuse resulting from the transmission of CSAM on Apple's iCloud service in the three years preceding the filing of this lawsuit." *Id.* ¶ 105. Plaintiffs allege that the exact size of the class is unknown, "it is likely, based on the nature of [Apple's] business, that class members number in the millions." *Id.* ¶ 107.

## II. LEGAL STANDARD

### A. Motion to Dismiss

Under Fed. R. Civ. P. 12(b)(6), a complaint or cause of action can be dismissed where the pleading fails to state a claim upon which relief can be granted. To survive a motion to dismiss on those grounds, the "complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

3

1    The Court must accept the well-pleaded allegations of fact in the complaint as true, and must construe those facts—and all inferences from those facts—in the light most favorable to the Plaintiff. *Warren v. Fox Fam. Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003). But the Court need not accept as true "legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged." *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-755 (9th Cir.1994); *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1200 (9th Cir. 2003).

Under Rule 9(b), allegations of fraud or mistake must be pled "with particularity." Fed. R. Civ. P. 9(b). "A pleading is sufficient under Rule 9(b) if it identifies the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations." *Neubronner v. Milken*, 6 F.3d 666, 671-72 (9th Cir. 1993) (citations and quotations omitted). This includes pleading "the who, what, when, where, and how of the misconduct charged." *Whiteside v. Kimberly Clark Corp.*, 108 F.4th 771, 785 (9th Cir. 2024) (citation and quotations omitted).

### B.  Section 230

Apple argues that Section 230 of the Communications Decency Act ("CDA") bars Plaintiffs' suit in its entirety because all of Plaintiffs' claims rely on Apple's role as a publisher of third-party data. Mot. at 5. Section 230(c)(1) states that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). The Ninth Circuit has interpreted this provision to protect from liability: "(1) a provider or user of an interactive computer service (2) whom a plaintiff seeks to treat, under a state law cause of action, as a publisher or speaker (3) of information provided by another information content provider." *Barnes v. Yahoo!, Inc.,* 570 F.3d 1096, 1100-01 (9th Cir. 2009), *as amended* (Sept. 28, 2009). Acting as a publisher includes "reviewing, editing, and deciding whether to publish or to withdraw from publication third-party content." *Id*. at 1102. However, "it is not enough that a claim, including its underlying facts, stems from third-party content for Section 230 immunity to apply." *Calise v. Meta Platforms, Inc.*, 103 F.4th 732, 742 (9th Cir. 2024). Rather, "[t]he proper analysis is to examine closely the duty underlying each cause of action and decide if it 'derives from the defendant's status or

4

conduct as a publisher or speaker.'" *Est. of Bride by & through Bride v. Yolo Techs., Inc.*, 112 F.4th 1168, 1179 (9th Cir. 2024) (quoting *Barnes*, 570 F.3d at 1107). As the Ninth Circuit in *Bride* explained:

> First, we examine the "right from which the duty springs." Does it stem from the platform's status as a publisher (in which case it is barred by § 230)? Or does it spring from some other obligation, such as a promise or contract (which, under *Barnes*, is distinct from publication and not barred by § 230)? Second, we ask what "this duty requir[es] the defendant to do." If it *requires* that [defendant] moderate content to fulfill its duty, then § 230 immunity attaches.

*Id.* at 1177 (internal citations omitted).

There is no dispute that Apple is a provider of interactive computer services. Mot. at 5-6. The question is whether Plaintiffs' claims seek to treat Apple as a *publisher* or *speaker* of information provided by others.

The legislative intent behind the CDA and its various amendments shows Congress' shifting priorities over the last 25 years, but the protection of children has always been its principal aim. "When it was introduced, the primary purpose of the CDA was to protect children from sexually explicit internet content." *Fed. Trade Comm'n v. LeadClick Media, LLC*, 838 F.3d 158, 173 (2d Cir. 2016) (citing legislative history). "Section 230, enacted through an amendment to the CDA, had a different objective: '[T]o preserve the vibrant and competitive free market that presently exists for the Internet and other interactive computer services, unfettered by Federal or State regulation.'" *Id.* (quoting § 230(b)(2)). In 2018, however, Congress enacted the Fight Online Sex Trafficking Act ("FOSTA") because "section 230 . . . was never intended to provide legal protection to . . . websites that facilitate traffickers in advertising the sale of unlawful sex acts with sex trafficking victims." FOSTA, Pub. L. No. 115-164 § 2(1), 132 Stat. 1253 (2018).

At the motion to dismiss stage, the Court notes that "Section 230(c)(1) is an affirmative defense." *Calise*, 103 F.4th at 738. Apple thus bears the "burden of showing that § 230(c)(1) applies." *Id.* Accordingly, the Court may not dismiss a complaint where plaintiffs "plead facts demonstrating a potential factual dispute that could affect whether the defense applies." *Rabin v. Google LLC*, 725 F. Supp. 3d 1028, 1031 (N.D. Cal. 2024). "Only when the plaintiff pleads itself out of court—that is, admits all the ingredients of an impenetrable defense—may a complaint that

otherwise states a claim be dismissed under Rule 12(b)(6)." *Durnford v. MusclePharm Corp.*, 907 F.3d 595, 604 (9th Cir. 2018).

### III. DISCUSSION

#### A. CLAIM I: Violation of Sex Trafficking Laws (18 U.S.C. § 2421A)

FOSTA created a brand-new felony offense, *see* 18 U.S.C. 2421A, by making it a crime to "own[ ], manage[ ], or operate[ ] an interactive computer service . . . or conspire[ ] or attempt[ ] to do so" if done "with the intent to promote or facilitate the prostitution of another person[.]" § 2421A(a). It also included a civil recovery provision allowing "[a]ny person injured by reason of a[n] [aggravated] violation" to recover damages. § 2421A(c). The protection afforded by Section 230 does not immunize conduct in violation of § 2421A. *See* 47 U.S.C. § 230(e)(1) ("Nothing in this section shall be construed to impair the enforcement . . . of Title 18, or any other Federal criminal statute.").

As alleged by Plaintiffs, iCloud is "the greatest platform for storing and distributing child porn." FAC ¶ 117. "Despite knowing that iCloud is the main place for the proliferation of CSAM, Apple 'chose not to know about it.'" *Id.* It follows, according to Plaintiffs, that Apple promoted and/or facilitated the prostitution of another person in failing to act on this knowledge.

Apple argues that "[t]he FAC does not allege that Apple 'promote[d] or facilitate[d] the prostitution of 5 or more persons,'" or even that of a single person. Mot. at 11 (quoting § 2421A(b)(1)). The Court agrees. "[P]romoting prostitution has a distinct meaning in criminal law." *Woodhull Freedom Found. v. United States*, 72 F.4th 1286, 1300 (D.C. Cir. 2023). "[W]hen read within its traditional criminal law context, Section 2421A(a)'s prohibition on promoting the prostitution of another person proscribes owning, managing, or operating an online platform with the intent to recruit, solicit, or find a place of business for a sex worker—that is, to aid and abet prostitution." *Id.*; *see also Datres v. Winfree*, No. 1:23-CV-519, 2024 WL 1756160, at *13 (W.D. Mich. Apr. 24, 2024) ("[N]either sexual assault, . . . nor the production of sexually explicit images and videos constitutes 'prostitution'" under Section 2421A.). Here, Plaintiffs allege that two individuals sent "videos containing CSAM" via iMessage to Doe, and "instruct[ed]" Doe to send "CSAM videos of herself." FAC ¶¶ 85-87, 90-94. Plaintiffs' single

6

conclusory allegation that the perpetrators at the center of this case were commercial sex traffickers is not enough to transform Apple's alleged conduct into a Section 2421A violation.

Although Plaintiffs alleged the perpetrators' used iCloud for CSAM, Plaintiffs failed to allege any facts that Apple acted with intent to promote or facilitate the prostitution of another. Apple's motion to dismiss Claim I is GRANTED WITH PREJUDICE.

### B.    CLAIM II: Violations of Federal Child Pornography Crime and Request for Civil Remedy for Personal Injuries

Congress enacted 18 U.S.C. § 2255, known as "Masha's Law," in 2005 to address the "lack [of] effective remedies under Federal law" for victims of child pornography. *Stephens v. Clash*, 796 F.3d 281, 285 (3d Cir. 2015) (internal quotation omitted). Masha's Law provides a civil remedy for "[a]ny person who, while a minor, was a victim of a violation of" various sections of Title 18 prohibiting sexual exploitation of children, including §§ 2252 and 2252A. *M.H. On behalf of C.H. v. Omegle.com LLC*, 122 F.4th 1266, 1271 (11th Cir. 2024). It is a violation of Masha's Law to: "knowingly receive[], or distribute[], any visual depiction using any means . . . including by computer . . . if-- . . . [the] visual depiction involves the use of a minor engaging in sexually explicit conduct; and . . . such visual depiction is of such conduct"; it is also a violation to "knowingly possess[] . . . any . . . material that contains an image of child pornography that has been . . . transported using any means or facility of interstate or foreign commerce . . . including by computer." 18 U.S.C. § 2252(a)(2), (4); 18 U.S.C. § 2252A(a)(2), (5).

The parties dispute whether Apple had (as alleged) the requisite knowledge to violate §§ 2252 and 2252A. Apple argues that Plaintiffs must plead that Apple had actual knowledge of the CSAM at issue in this case, Mot. at 18; Plaintiffs insist that Apple's willful blindness is enough to meet that burden, FAC ¶ 117; *see generally id.* ¶ 14-38.[1]

---

[1] Plaintiffs make a single conclusory allegation that Apple "had actual knowledge that violations of child pornography laws . . . were occurring on iCloud and its products," but fails to provide any additional facts to that effect. FAC ¶ 136. *Bell Atlantic Corp.*, 550 U.S. at 555 ("[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.").

7

It is well established that "the term 'knowingly' in § 2252 extends both to the sexually explicit nature of the material and to the age of the performers." *United States v. X-Citement Video*, 513 U.S. 64, 78 (1994). Accordingly, a person "knowingly possesse[s]" child pornography when they "knew the [videos] in question contained a visual depiction of minors engaging in sexually explicit conduct." *See United States v. Dixon*, 589 F. App'x 427, 428 (11th Cir. 2014); *Doe v. Mindgeek USA Inc.*, 558 F. Supp. 3d 828, 843 (C.D. Cal.), *adhered to on denial of reconsideration*, 574 F. Supp. 3d 760 (C.D. Cal. 2021) (denying a motion to dismiss where the "[p]laintiff alleges that [d]efendants were told repeatedly by law enforcement agencies, victims, advocacy groups, press reports, and government agencies about the prevalence of child pornography on their websites.")

*Does 1-6 v. Reddit, Inc.* is directly on point; the Court held that willful ignorance of a provider, without more, cannot sustain a violation of a sex trafficking statute such as §§ 2252 or 2252A. 51 F.4th 1137, 1145-46 (9th Cir. 2022) ("Taken as true, these allegations suggest only that Reddit 'turned a blind eye' to the unlawful content posted on its platform, not that it actively participated in sex trafficking."). Accordingly, Plaintiffs' allegation "that [Apple] provides a platform where it is easy to share child pornography" is insufficient; Apple's willful blindness does not constitute the requisite knowledge required under *Reddit* for Plaintiff's claim to proceed. *Id.*

The cases that Plaintiffs cite do not require a different outcome. In *United States v. Dixon*, the court required the government to "make a showing that the defendant knew *the files in question* contained a visual depiction of minors engaging in sexually explicit conduct." 589 F. App'x 427, 428 (11th Cir. 2014) (emphasis added). There, the government pointed to specific files that defendant knew or should have known included CSAM. Likewise in *Mindgeek*, the plaintiff alleged that defendants' "moderators knowingly reviewed, approved, and featured child pornography videos on their platforms, including videos of Plaintiff." 558 F. Supp. 3d at 843. As alleged, the CSAM found on the site necessarily required defendant to review and sign off on each instance of CSAM. In contrast, Plaintiffs here have not—and it appears they cannot—allege that

Apple knew of the specific five CSAM videos sent to Doe, nor of the CSAM videos that Doe sent back, before those materials were wiped by law enforcement. FAC ¶¶ 86-96.

What's more, even if Plaintiffs were able to allege actual knowledge, their claims would likely fail pursuant to Section 230. The Ninth Circuit has already decided that Section 230 immunizes publishers where the underlying violations are civil rather than criminal. *Doe #1 v. Twitter, Inc.*, No. 22-15103, 2023 WL 3220912, at *2 (9th Cir. May 3, 2023) ("[A]lthough section 230(e)(1) exempts from immunity the enforcement of criminal laws under Chapter 110 of Title 18 (which contains sections 2252A and 2255), our court has consistently held that § 230(e)(1)'s limitation on § 230 immunity extends only to criminal prosecutions, and *not to civil actions based on criminal statutes*.") (internal quotations omitted) (emphasis added).

Accordingly, Apple's motion to dismiss Claim II is GRANTED WITH PREJUDICE.

### C.   CLAIM III: Violations of Federal Law for Failure to Report Child Abuse

In their opposition, Plaintiffs withdraw their claims brought under 18 U.S.C. § 2258A. Opp'n at 12. Claim III is DISMISSED WITH PREJUDICE.

### D.   CLAIMS IV & V: Consumer Protection Claims

Plaintiffs allege consumer protection violations under both North Carolina and California law. North Carolina's Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75–1.1 ("NCUDTPA"); California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code, §17200 *et seq.*; False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §17500 *et seq*. Apple responds with several arguments, among them that Plaintiffs fail to allege an actionable misrepresentation, fail to allege actual reliance, and fail to allege sufficient underlying unfair practices. The Court lays out the different standards below and then takes each of Apple's arguments in turn.

#### 1.   North Carolina Standard

The NCUDTPA declares unlawful "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce." N.C. Gen. Stat. § 75–1.1. To state an unfair and deceptive trade practices claim, "a plaintiff must show (1) an unfair or deceptive act or practice (2) in or affecting commerce (3) which proximately caused actual injury to the plaintiffs." *Walker v. Fleetwood Homes of N.C., Inc.,* 362 N.C. 63, 71-72

(2007). An unfair practice "offends established public policy [or] . . . is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." *Id.* at 72. A deceptive practice "has the capacity or tendency to deceive." *Id*.

A successful claim under NCUDTPA does not necessarily require allegations of "fraud, bad faith, deliberate or knowing acts of deception, or actual deception, but plaintiff must show that the acts complained of possessed the tendency or capacity to mislead, or created the likelihood of deception." *Gress v. Rowboat Co.*, 190 N.C. App. 773, 776 (2008) (internal citations omitted). "[A] claim under section 75–1.1 stemming from an alleged misrepresentation . . . require[s] a plaintiff to demonstrate reliance on the misrepresentation in order to show the necessary proximate cause." *In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*, 753 F. Supp. 3d 849, 920 (N.D. Cal. 2024), *appeal dismissed sub nom. Fla. Off. of Att'y Gen. v. Meta Platforms, Inc.*, No. 24-7019, 2024 WL 5443167 (9th Cir. Dec. 16, 2024) ("*In re Social Media II*") (quoting *In re Hester*, 2015 WL 6125308, at *4 (Bankr. E.D.N.C. Oct. 16, 2015)).

### 2. California Standard

The UCL and FAL prohibit "unlawful, unfair or fraudulent business act[s] or practice[s]" and "unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof.Code §§ 17200, 17500. Claims under the UCL and FAL "are governed by the 'reasonable consumer' standard." *McGinity v. Procter & Gamble Co.*, 69 F.4th 1093, 1097 (9th Cir. 2023) (quoting *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008). "[T]he reasonable consumer standard requires a probability 'that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled.'" *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016) (quoting *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496 (2003)).

Under the UCL specifically, a plaintiff may pursue a claim under any or all of three theories: the "unlawfulness," "fraudulent," or "unfairness" prongs. *S. Bay Chevrolet v. General Motors Acceptance Corp.*, 72 Cal. App. 4th 861, 878 (1999). A "fraudulent" business practice is one that is likely to deceive the public and may be based on representations that are untrue. *McKell v. Washington Mut., Inc.*, 142 Cal. App. 4th 1457, 1471 (2006).

10

"Whether conduct is unfair can be determined in one of two ways: (1) by establishing that the conduct offends 'some legislatively declared policy' (the 'tethering' test), or (2) by weighing the utility of the conduct against the harm to the consumer (the 'balancing' test)." *Republican Nat'l Comm. v. Google LLC*, 742 F. Supp. 3d 1099, 1114-15 (E.D. Cal. 2024) (quoting *Day v. GEICO Cas. Co.*, 580 F. Supp. 3d 830, 844-45 (N.D. Cal. 2022). The tethering test requires that the alleged conduct be "tethered to some legislatively declared policy or proof of some actual or threatened impact on competition." *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 186-87 (1999). The balancing test is less clearly defined, but "involves an examination of [the business practice's] impact on its alleged victim, balanced against the reasons, justifications and motives of the alleged wrongdoer" and requires the court to "weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim." *S. Bay Chevrolet*, 72 Cal. App. 4th at 886-87 (cleaned up). In assessing whether and to what extent a business practice is harmful, courts will look to whether it is "immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1169 (9th Cir. 2012).

### 3. Analysis

As a threshold matter, Plaintiffs are vague about what type of consumer violation(s) their complaint alleges. Because North Carolina and California consumer protection laws are nuanced and not identical, the relevant tests and analysis that apply depend on what type of consumer violation Plaintiffs allege against Apple. While it appears Plaintiffs are alleging a single misrepresentation that that sounds in negligence rather than fraud, Plaintiffs must specify Apple's alleged violation(s) should Plaintiffs elect to renew these claims in amended form.

#### a. Actual Misrepresentation (NC/CA)

Apple appears to concede that Plaintiffs have *alleged* at least one misrepresentation related to its CSAM scanning tool (though Apple submits that single alleged misrepresentation is not actionable). Reply at 12-13. In August 2021, Apple announced that it would be launching a CSAM scanning tool, signifying that it could and likely would make use of the scanning provision in the privacy policy imminently, if it was not already doing so. FAC ¶ 58. When Apple

11

1  announced the release of the CSAM scanning tool, Apple also released a 12-page technical
2  summary of the tool's capabilities, which stated in the *present tense* that the tool, "CSAM
3  Detection[,] enables Apple to accurately identify and report iCloud users who store known
4  [CSAM] in their iCloud Photos."[2]  With this information as background, (when considered in the
5  light most favorable to Plaintiffs), a reasonable person could be misled by Apple's representation
6  that it "may also use your personal information for . . . prescreening or scanning uploaded content
7  for potentially illegal content, including [CSAM]."  FAC ¶ 146.

### b.  Applicability of Rule 9(b) (NC/CA)

"Rule 9(b) requires claims that 'sound in fraud' plead with particularity the 'time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations.'" *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (quoting *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004)).  A "claim is said to be 'grounded in fraud' or to 'sound in fraud' "when the plaintiff "allege[s] a unified course of fraudulent conduct and rel[ies] entirely on that course of conduct as the basis of a claim." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003).

That said, consumer protection violations need not "sound in fraud" to be actionable.  In North Carolina, for example, an NCUDTPA "claim may sound more broadly than fraud." *Burn v. Lend Lease (US) Pub. Partnerships LLC*, No. 7:20-CV-174-D, 2021 WL 4164685, at *8 (E.D.N.C. Sept. 13, 2021); *see also Gress*, 190 N.C. App. at 776 (holding that to prevail on a UDTPA claim, "it is not necessary for the plaintiff to show fraud . . . plaintiff must show that the acts complained of possessed the tendency or capacity to mislead, or created the likelihood of deception.") (alteration and quotations omitted)).  For Rule 9(b)'s particularity requirements to apply, the Court must determine whether Plaintiffs' UDTPA claim as alleged sounds in fraud. *See Cross v. Ciox Health, LLC*, 438 F. Supp. 3d 572, 584 (E.D.N.C. 2020) (holding that Rule 9(b)'s

---

[2] *CSAM Detection: Technical Summary*, APPLE (Aug. 2021), https://www.apple.com/child-safety/pdf/CSAM_Detection_Technical_Summary.pdf.

requirements applied to plaintiffs' UDTPA claim only after determining that the claim was based on defendant's "fraudulent statements").

Similarly, the applicability of Rule 9(b) in California UCL and FAL cases is an open question in the Ninth Circuit.[3] *Compare Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1019 (9th Cir. 2020) ("Rule 9(b) requirements may not even be necessary, given that a defendant can violate the UCL, FAL, and [Consumer Legal Remedies Act] by acting with mere negligence.") *with Avakian v. Wells Fargo Bank, N.A.*, 827 F. App'x 765, 766 (9th Cir. 2020) ("[C]laims for unfair business practices, intentional misrepresentation, fraud, and negligent misrepresentation are all fraud-based claims, and must meet the heightened pleading requirements of Rule 9(b)."); *see also In re Social Media II*, 753 F. Supp. 3d at 892 n.40.

As discussed above, because Plaintiffs have not alleged their underlying violation(s) with sufficient precision, the Court will defer its Rule 9(b) analysis until such time Plaintiffs replead their complaint with clearly defined violation(s). For the purposes of this Order, the analysis below assumes (without deciding) that the alleged violation currently in the complaint does not "sound in fraud."

### c.     California Unfair Practices Tests (CA)

When analyzing an unfair practice under the UCL balancing test, the Court weighs the unfair practice's "impact on its alleged victim . . . against the reasons, justifications and motives of the alleged wrongdoer." *S. Bay Chevrolet*, 72 Cal. App. 4th at 886. Apple argues that the complaint fails under this test, and the Court agrees. Mot. at 22-23. The FAC is replete with references to Apple's promotional materials that tout the benefits of its technology, *see*, *e.g.*, FAC ¶¶ 5, 7, 36, but Plaintiffs do not confront or weigh the import of those benefits. At a minimum, Plaintiffs must allege that the harm detailed in the complaint outweighs the beneficial aspects of the iCloud technology. Plaintiffs fail to do so here.

That said, the California UCL claims are sufficiently "tethered" to a "legislatively declared policy." *Cel-Tech*, 20 Cal. 4th at 186 (1999). The court in *In re Social Media II* addressed this

---

[3] Plaintiffs appear to concede that Rule 9(b) applies in these circumstances.

exact issue and found that the California legislature had sufficiently expressed its interest and commitment to children and online safety. *In re Social Media II*, 753 F. Supp. 3d at 901 (citing 2022 Cal. Legis. Serv. Ch. 320, § 1(a)(3), (c)). "Accordingly, it is fairly characterized as tethered to legislative policy." *Id.* Because these claims are dismissed for other reasons, *see supra*, the Court need go no further at this juncture than noting Plaintiffs meet the tethering test.

### d.     Equitable Harm  (CA)

Apple claims that Plaintiffs have not alleged cognizable relief under the UCL. Mot. at 24. The UCL is an equitable statute with limited remedies and allows only for restitution and injunctive relief. *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1150 (2003). In their Opposition, Plaintiffs note that the complaint seeks "equitable relief as an alternative to legal remedies, and at this motion to dismiss state, dismissal is premature." Opp'n at 20. The weight of the caselaw favors allowing Plaintiffs to "allege claims in the alternative at the pleading stage." *Freeman v. Indochino Apparel, Inc.*, 443 F.Supp.3d 1107, 1114 (N.D. Cal. 2020) ("The equitable remedies afforded by the UCL and CLRA are expressly stated to be in addition to other available remedies at law.").

### e.     Economic Harm (CA)

A UCL claim may only be brought by "a person who has suffered injury in fact and has lost money or property as a result of the unfair competition." Cal. Bus. & Prof. Code § 17204. To satisfy the UCL's standing requirements, a plaintiff must "demonstrate some form of economic injury," such as surrendering more or acquiring less in a transaction, having a present or future property interest diminished, being deprived of money or property, or entering into a transaction costing money or property that would otherwise have been unnecessary. *Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310, 323 (2011). Apple correctly points out that Plaintiffs fail to allege economic harm. To do so, Plaintiffs must allege that they spent money they would not have otherwise spent. There are no allegations to that effect here, so the UCL and FAL claims must be dismissed on those grounds.

### f. Reliance and Causation (NC/CA)

Actual reliance "requires a plaintiff to allege that 'the defendant's misrepresentation or nondisclosure was an immediate cause of the plaintiff's injury-producing conduct.' 'A plaintiff may . . . [do so] by showing that in its absence the plaintiff in all reasonable probability would not have engaged in the injury-producing conduct.'" *Perkins v. LinkedIn Corp.*, 53 F. Supp. 3d 1190, 1220 (N.D. Cal. 2014) (quoting *In re Tobacco II Cases*, 46 Cal. 4th 298 (2009)) (citations omitted); *Ellis Smith-Broadhurst, Inc.*, 48 N.C. App. 180, 184 (1980) ("As an essential element of plaintiff's cause of action, plaintiff must prove not only a violation of [NCUDTPA] by the defendants, but also that plaintiff has suffered actual injury as a proximate result of defendants' misrepresentations."). In California, at least, a plaintiff does not need to show that defendant's misrepresentation was "the sole or even the predominant or decisive factor influencing [plaintiff's] conduct, only that it played a substantial part in the plaintiff's decision-making." *In re ZF-TRW Airbag Control Units Prods. Liab. Litig.*, 601 F. Supp. 3d 625, 766 (C.D. Cal. 2022), *opinion clarified sub nom. In re ZF-TRW Airbag Control Units Prods.*, No. LAML1902905JAKFFMX, 2022 WL 19425927 (C.D. Cal. Mar. 2, 2022) (cleaned up) (citations omitted). "That one would have behaved differently can be presumed, or at least inferred, when the omission is material." *Madani v. Volkswagen Grp. of Am., Inc.*, No. 17-CV-07287-HSG, 2019 WL 3753433, at *10 (N.D. Cal. Aug. 8, 2019) (quoting *Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1225 (9th Cir. 2015)).

Reliance and causation are essential elements in a consumer protection action, but Plaintiffs' complaint fails on both counts. *See Johannessohn v. Polaris Indus., Inc.*, 450 F. Supp. 3d 931, 985 (D. Minn. 2020), *aff'd,* 9 F.4th 981 (8th Cir. 2021) ("UCL… and NCUDTPA all require actual reliance."). Plaintiffs' only allegations about reliance are conclusory, *see* FAC ¶¶ 147-148 (alleging "constructive[]" reliance without more), and do not indicate who relied on Apple's misrepresentations or how or when that reliance occurred. Nor do Plaintiffs allege sufficient causation, failing entirely to make the connection between *Apple's* conduct and the

injury alleged.[4] *Id.* (alleging injury was a "direct result of Apple's actions," but providing no further particulars). These deficiencies doom Plaintiffs' currently pleaded North Carolina and California claims.

In accordance with the deficiencies described above, Apple's motion to dismiss Claim IV and V are GRANTED with leave to amend.

### E.     CLAIM VI: Unjust Enrichment[5]

In California, "[t]o allege unjust enrichment as an independent cause of action, a plaintiff must show that a defendant received and unjustly retained a benefit at the plaintiff's expense." *Russell v. Walmart, Inc.*, 680 F. Supp. 3d 1130, 1133 (N.D. Cal. 2023) (quoting *ESG Cap. Partners, LP v. Stratos*, 828 F.3d 1023, 1038 (9th Cir. 2016). In North Carolina, a claim for unjust enrichment requires a plaintiff to establish that "(1) a measurable benefit was conferred on the defendant, (2) the defendant consciously accepted that benefit, and (3) the benefit was not conferred officiously or gratuitously." *Primerica Life Ins. Co. v. James Massengill & Sons Const. Co.*, 211 N.C. App. 252, 259–60 (2011).

Here, Plaintiffs allege that Apple was unjustly enriched through "revenue extracted from subscriptions to its services, particularly iCloud…that facilitated the safekeeping and proliferation of CSAM." FAC ¶ 164. Plaintiff allegedly "conferred a tangible economic benefit upon [Apple] by creating an Apple ID, consuming apps, products, and services within [Apple]'s ecosystem, and providing access to personal information." *Id.* ¶ 163. Apple responds that the claim must be

---

[4] Apple asserts that, even if Plaintiffs were able to allege causation, they would be unable to allege that Apple's misrepresentation was the proximate cause of those injuries. Opp'n at 24-25. The Court is not persuaded by Apple's authorities that intervening criminal conduct breaks the chain of causation when the conduct is foreseeable, as Plaintiffs have alleged here. *See generally* FAC (alleging Apple had knowledge of the perils of its product but failed to act on it); *Chanda v. Fed. Home Loans Corp.*, 215 Cal. App. 4th 746, 755 (2013) ("To qualify as a superseding cause so as to relieve the defendant from liability for the plaintiff's injuries, both the intervening act and the results of that act must not be foreseeable. Significantly, what is required to be foreseeable is the general character of the event or harm . . . not its precise nature or manner of occurrence.").

[5] Though the Ninth Circuit does not have a "standalone cause of action for unjust enrichment . . . [w]hen a plaintiff alleges unjust enrichment, a court may construe the cause of action as a quasi-contract claim seeking restitution." *Astiana v. Hain Celestial Grp., Inc.,* 783 F.3d 753, 762 (9th Cir. 2015). Since *Astisana*, courts in this District tend to let claims titled Unjust Enrichment go forward. *See, e.g., In re Facebook, Inc., Consumer Priv. User Profile Litigation*, 402 F. Supp. 3d 767, 803 (N.D. Cal. 2019)

16

dismissed because "there is no allegation [(1)] that Apple gained anything at Plaintiff's expense" nor (2) that Plaintiffs "reli[ed] on Apple's allegedly misleading statements." *Id.*

Plaintiffs' allegations are not enough to sustain a claim for unjust enrichment. As written, both the benefit conferred and Plaintiffs' reliance are pled in conclusory fashion. It is insufficient to say that Doe's engagement in the Apple ecosystem constituted a 'benefit,' Plaintiffs must allege that Apple benefited from Plaintiffs' expense, for example Plaintiffs' payment to Apple for iCloud. Nor is it enough for Plaintiffs to say they "constructively relied on Apple's representations" without providing any further information. FAC ¶ 147.

Additionally, Plaintiffs must properly allege which state's law purportedly governs their claims. *See In re Static Random Access Memory (SRAM) Antitrust Litig.*, 580 F. Supp. 2d 896, 910 (N.D. Cal. 2008) (dismissing unjust enrichment claim because "until Plaintiffs indicate which States' laws support their claim, the Court cannot assess whether the claim has been adequately plead.").

Defendant's motion to dismiss Claim VI is GRANTED. Claim VI is DISMISSED with leave to amend.

### F.  CLAIMS VII, VIII and IX: Negligent Misrepresentation and Products Liability

Plaintiffs remaining claims arise out of common law torts: negligent misrepresentation and products liability. Apple takes issue with Plaintiffs' failure to specify the applicable state law for either of Plaintiffs' products liability claim, *see* Mot. at 14, Reply at 9. Plaintiffs concede that they must choose the governing state law but urge the Court to defer that choice until Plaintiffs have "a better understanding of the nation-wide class putatively stated here." Opp'n at 12. Though there are some cases which suggest the issue should or could be deferred at the pleading stage, "courts in this district have held that, due to variances among state laws, failure to allege which state law governs a common law claim is grounds for dismissal." *Sidhu v. Bayer Healthcare Pharms. Inc.*, No. 22-CV-01603-BLF, 2022 WL 17170159, at *3 (N.D. Cal. Nov. 22, 2022) (quoting *Romero v. Flowers Bakeries, LLC*, No. 14-cv-05189-BLF, 2016 WL 469370, at *12 (N.D. Cal. Feb. 8, 2016)); *see also In re Ditropan XL Antitrust Litig.*, 529 F. Supp. 2d 1098, 1101 (N.D. Cal. 2007)

("[U]nless and until . . . Plaintiff clarifies under what state law it is moving, neither Defendants nor the Court can address whether the claim or claims have been adequately plead."). Cleaving to a specific state law at this juncture promotes judicial efficiency and distills the merits of the case for all parties.

The motion to dismiss the common law claims for failure to identify which state law applies is GRANTED WITH LEAVE TO AMEND.

### IV. MOTION TO STAY DISCOVERY

A district court "may, for good cause, issue an order to protect a party or person from . . . undue burden or expense," including by staying discovery. Fed. R. Civ. P. 26(c)(1). With this order, the Court dismisses Plaintiffs' complaint in full, though grants leave to amend several claims. With no operative complaint, the scope of Plaintiffs' case is unfocused; because three claims were dismissed with prejudice, the scope of the subsequent complaint will contract accordingly. The Court finds good cause to STAY discovery until such time if or when that scope becomes more definite.

### V. CONCLUSION

For the reasons stated, Apple's motion to dismiss is GRANTED with partial leave to amend. Claims I-III are DISMISSED WITH PREJUDICE. Claims IV-IX are DISMISSED WITH LEAVE TO AMEND. Plaintiffs shall file any amended complaint within 21 days of this order.

Apple's motion to stay is GRANTED.

**IT IS SO ORDERED.**

Dated: May 1, 2025

Noël Wise
United States District Judge